MAYFAIR FABRICS, PLAINTIFF-RESPONDENT, v. HENRY HENLEY, *ET AL.*, DEFENDANTS, AND WILLIAM B. NATELL AND JEAN NATELL, DEFENDANTS-APPELLANTS.

Argued December 6, 1966—Decided February 6, 1967.

484

*Mr. H. Curtis Meanor* argued the cause for appellants (*Messrs. Lamb, Blake, Hutchinson & Dunne,* attorneys).

*Mr. Marvin A. Sachs* argued the cause for respondent (*Messrs. Feuerstein & Sachs,* attorneys).

The opinion of the court was delivered by

JACOBS, J. The plaintiff Mayfair Fabrics leased premises in Clifton from the defendants William and Jean Natell. The premises consisted of a new commercial building and the plaintiff was the first tenant. The lease was negotiated by Max Schwartz, president of Mayfair, and Joseph Salerno, attorney for the Natells. Schwartz is a member of the New York bar. Before he signed the lease on Mayfair's behalf, he consulted with a member of the New Jersey bar and discussed with him its various provisions including paragraph 28. That paragraph was in a typewritten rider attached to the printed form of lease and read as follows:

"It is mutually agreed that the landlords will insure the building against fire and the tenant agrees to carry fire insurance upon all equipment and personal property used, placed or stored in, on or near the leased premises and in no event shall the landlord be responsible or liable for loss or damage to the tenant's property by fire, explosion or otherwise. In the event that the hazards of the tenant's business makes it impossible for landlords to obtain fire insurance at standard rates covering the said building then this lease shall at the option of the landlord be null and void."

The lease was for a five-year term and the annual rental was $10,000. Under paragraph 27 the landlords were required to relocate three space heaters in the premises to accommodate a monorail hoist to be installed by the tenant. Before the tenant actually moved in, the landlords had removed two of the space heaters and had stored them. The tenant moved in during the spring of 1963 and thereafter Schwartz reminded William Natell that the heating units would have to be reinstalled before the summer was over. Natell engaged Henley who did heating installation and

service work. Henley, aided by Natell, worked at the premises in the course of the reinstallation of the heaters but their work was not fully completed by the close of business on Friday, August 9, 1963. During the ensuing weekend, while the plaintiff's factory operations were in progress, there was a fire at the premises which caused very considerable damage. The plaintiff received approximately $180,000 from insurance companies which had covered its property at the premises against loss by fire.

In December 1963 the plaintiff filed its complaint in the Law Division seeking damages from the defendants on the ground that the fire resulted from the negligent work of the Natells and Henley at the premises. The Natells filed an answer which contained various matters including a separate defense based on the exculpatory provision in paragraph 28. Thereafter the Natells moved for summary judgment with a supporting affidavit by William Natell setting forth that because of the terms of paragraph 28 he had purchased a liability policy in the sum of only $50,000 which he considered sufficient to cover "potential liabilities of others aside from Mayfair Fabrics which was the sole tenant in the premises." The trial court denied the motion in a letter opinion which expressed its view that there was a factual question as to whether the loss suffered by the plaintiff "arose out of the landlord-tenant relationship or whether the loss resulted from the defendant-landlord acting in a capacity other than a landlord." With leave granted, the Natells appealed from the denial of their motion to the Appellate Division and we certified before argument there.

█ The record before us leaves no room to dispute that the activity of the Natells on which the plaintiff's claim against them is grounded was in their capacity as landlords and not otherwise. They had agreed in the lease to relocate the space heaters and that is exactly what they were in the process of doing when, according to the plaintiff, they engaged in negligent conduct which caused the fire loss. If, as the Natells urge, the exculpatory clause in paragraph 28 is to

be honored as not violative of any public policy in our State, then its terms clearly afford a measure of protection to them here. See *Midland Carpet Corp. v. Franklin Associated Properties,* 90 *N. J. Super.* 42, 44–47 *(App. Div.* 1966) ; *cf. W. F. Zimmerman v. Daggett & Ramsdell, Inc.,* 34 *N. J. Super.* 81, 83–84 *(Law Div.* 1955). In *Zimmerman,* Judge Foley recognized that a commercial lease provision that the landlord should not be liable for fire or explosion damage to the tenant's property would protect the landlord against a claim arising out of conduct "encompassed by the landlord-tenant relationship." 34 *N. J. Super.,* at *p.* 84. However, he differentiated the case before him since it involved alleged negligence outside the leased premises in the pursuit of the defendants' own commercial operations "unconnected with and unrelated to its functions as a landlord." 34 *N. J. Super.,* at *p.* 85.

Where they do not adversely affect the public interest, exculpatory clauses in private agreements are generally sustained. *Globe Home Improvement Co. v. Perth Amboy, etc., Inc.,* 116 *N. J. L.* 168, 170 *(E. & A.* 1936). But where a party to the agreement is under a public duty entailing the exercise of care, he may not relieve himself of liability for negligence through an exculpatory clause; illustrative are common carriers, public utilities, and the like. See *Horelick v. Pennsylvania R. Co.,* 13 *N. J.* 349, 357 (1953) ; 6A *Corbin, Contracts* § 1472 (1962) ; *cf. McCarthy v. National Association for Stock Car Auto Racing, Inc.,* 48 *N. J.* 539 (1967). Similarly, in other situations where there is unequal bargaining power, the public interest may call for rejection of an exculpatory clause exacted by the dominant party; illustrative are *Kuzmiak v. Brookchester,* 33 *N. J. Super.* 575 (1955), where the Appellate Division dealt with a lease signed by residential tenants in an apartment building, and *Tunkl v. Regents of University of California,* 60 *Cal. 2d* 92, 32 *Cal. Rptr.* 33, 383 *P. 2d* 441 (1963), where the California Supreme Court dealt with an instrument signed by a patient on his admission to a charitable research

hospital. See 52 *Calif. L. Rev.* 350 (1964) ; 6 *Williston, Contracts* § 1751 (*Rev'd ed.* 1938, *Supp.* 1966) ; *cf. Henningsen v. Bloomfield Motors, Inc.,* 32 *N. J.* 358, 396–397 (1960).

In *Midland Carpet Corp. v. Franklin Assoc. Properties, supra,* the parties entered into a commercial lease which provided that the lessee would assume all risk and responsibility for damage to property in the leased premises and that he would obtain suitable insurance. The tenant's property was damaged when the pipes in the leased premises froze and burst. In holding that the tenant could not maintain action against the landlord, the Appellate Division distinguished Kuzmiak and pointed out that exculpatory clauses in commercial or industrial leases are ordinarily sustained as not involving "inequality of bargaining." 90 *N. J. Super.,* at *p.* 47. It noted that the lease reflected a studied attempt to spell out the distribution of the risks and that its practical effect was to specify "who was to obtain and to bear the cost of insurance to indemnify against loss or damage occurring to property within the demised premises." 90 *N. J. Super.,* at *p.* 48; see *Cozzi v. Owens Corning Fiber Glass Corp.,* 63 *N. J. Super.* 117, 128 (*App. Div.* 1960).

As in *Midland,* the parties here were not in unequal bargaining positions. They deliberately distributed the risks and designated who was to obtain the necessary insurance. The commercial tenant had full legal representation and the typewritten rider, which included several provisions for the tenant's benefit, evidenced the actual bargaining between the parties. Paragraph 28 was patently designed to place responsibility for fire damage to the tenant's property entirely on the tenant who was to carry fire insurance thereon. The responsibility for the building was that of the landlords who were to insure it against loss by fire, with a privilege to declare the lease void if they could not obtain fire insurance at standard rates because of the hazards of the tenant's business. The distribution of the risks entailed no elements of injustice and did not conflict with the public interest. It was a private contractual arrangement fairly and freely entered

into and which the common law would sympathetically carry out in accordance with the contemplation of the parties.

■■ The plaintiff contends that since paragraph 28 did not specifically refer to actions grounded on negligence it should be deemed inapplicable here. *Cf. Freddi-Gail v. Royal Holding Corp.,* 34 *N. J. Super.* 142 (*App. Div.* 1955). But there are no required words of art and, whatever be the language used or the rule of construction applied, the true goal is still the ascertainment and effectuation of the intent of the parties. See *George M. Brewster & Son v. Catalytic Const. Co.,* 17 *N. J.* 20, 32 (1954); *Stern v. Larocca,* 49 *N. J. Super.* 496, 501 (*App. Div.* 1958); *Corbin, supra* § 1472, at *p.* 604. It cannot fairly be doubted that, when the parties here allocated the fire risk and the obligation to insure, they had in mind fires caused by human negligence, as most of them are, as well as fires resulting from so-called acts of God. Nor can it fairly be doubted that the parties did not intend that a distinction be drawn between active and passive negligence, a distinction which has been questioned in other fields (*Prosser, Torts* § 54 (*3d ed.* 1964)) and should not be imported here. See *Midland Carpet Corp. v. Franklin Associated Properties, supra,* 90 *N. J. Super.,* at *p.* 49.

The plaintiff points out that in some of the states, exculpatory clauses in commercial as well as residential leases have been declared prospectively invalid by legislation. See *Weiler v. Dry Dock Savings Institution,* 258 *App. Div.* 581, 17 *N. Y. S. 2d* 192, affirmed 284 *N. Y.* 630, 29 *N. E. 2d* 938 (1940); *Manaster v. Gopin,* 330 *Mass.* 569, 116 *N. E. 2d* 134 (1953); *Booth v. Cebula,* 25 *Ill. App. 2d* 411, 166 *N. E. 2d* 618 (1960). But admittedly there is no comparable legislation in New Jersey and we may therefore give full effect to the cited common law precedents and the policy views expressed therein. It seems evident to us that, at least in the compelling circumstances established here, the valued interest in freedom of contract fairly outweighs such countervailing factors as might be considered pertinent.

■ The exculpatory clause, after providing that the tenant would carry fire insurance "upon all equipment and personal property used, placed or stored in" the leased premises, set forth that in no event would the landlord be responsible for fire damage "to the tenant's property." Question has been raised by some members of the Court as to whether, in the light of the quoted language, it may properly be said that the agreement of the parties contemplated a bar sufficiently comprehensive to include that part of the plaintiff's complaint which seeks damages for loss of prospective "business profits." *Cf. Stanley Co. of America v. Hercules Powder Co.,* 16 *N. J.* 295, 314 (1954); *Henry Clay v. City of Jersey City,* 74 *N. J. Super.* 490, 498 (*Ch. Div.* 1962), affirmed 84 *N. J. Super.* 9 (*App. Div.* 1964), certif. denied 43 *N. J.* 264 (1964). Since that question has not been briefed or argued, we do not pass on it and the plaintiff remains free to pursue it before the trial court.

Reversed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.