DAN CARBONE, *ET AL.*, PLAINTIFFS-APPELLANTS, v. CORTLANDT REALTY CORP., DEFENDANT-RESPONDENT, AND ORDOWER PLUMBING & HEATING, THIRD-PARTY DEFENDANT.

Argued February 8, 1971—Decided May 24, 1971.

*Mr. Harry C. Chashin* argued the cause for appellants (*Messrs. Iaria and Gelzer,* attorneys; *Mr. Chashin,* of counsel and on the brief).

*Mr. Aaron Dines* argued the cause for respondent (*Messrs. Lustbader & Lustbader,* attorneys; *Mr. Dines,* on the brief).

The opinion of the Court was delivered by

SCHETTINO, J. In this negligence action, instituted by the tenants against the landlord for damage to personalty caused by leakage from a steam pipe, the trial court granted summary judgment in favor of the landlord. On appeal, in an unreported *per curiam* opinion, the Appellate Division affirmed. We granted certification. 57 *N. J.* 290 (1970).

In granting the landlord's motion for summary judgment despite the specific allegations of negligence set forth in the complaint, the trial court found that the following exculpatory language included in the commercial lease immunized the landlord from liability for negligence.

> It is expressly agreed and understood by and between the parties to this agreement, that the Landlord shall not be liable for *any damage* or injury *to person* or *property caused by* or resulting from *steam*, electricity, gas, *water*, rain, ice or snow, or any leak or flow from or into any part of said building, or from any damage or injury resulting or arising from any other cause or happening whatsoever. (Emphasis added.)

We disagree.

In the context of a commercial lease, an exculpatory clause should not be construed to exculpate a landlord for his negligence unless the clause expressly so states, *Bauer v. 141-149 Cedar Lane Holding Co.,* 42 *N. J. Super.* 110, 118 (App. Div. 1956), *aff'd on other grounds,* 24 *N. J.* 139 (1957); *Freddi-Gail v. Royal Holding Corp.,* 34 *N. J. Super.* 142, 143-144 (App. Div. 1955) (and cases cited therein), or the intent to do so is evident from the arrangement of the parties, *Mayfair Fabrics v. Henley,* 48 *N. J.* 483, 489 (1967).

In *Freddi-Gail v. Royal Holding Corp., supra,* 34 *N. J. Super.* at 143-144, where the commercial lessee sued its lessor for water damage allegedly caused by the lessor's negligence, the court, in finding the exculpatory clause raised by the lessor as a bar to recovery by the lessee to be unavailing, said:

According to the weight of authority at the common law, an exculpatory clause exempting a landlord from liability for damage by water or some other cause, without clearly adverting to the matter of negligence on the landlord's part, does not absolve him from his own negligence, at least from negligence of an affirmative sort. It is said that the minds of both parties probably never intended such absolution. The strict construction thus given to the clause is in part to be laid to the disfavor with which these authorities look upon any possible attempt by a landlord to secure exoneration from his own wrongdoing.

The opinion assembles a wealth of authority in support of its text. *See also, Bauer v. 141-149 Cedar Lane Holding Co., supra*, 42 *N. J. Super.* at 118.

 We agree with that view. The exculpatory clause in the instant case does not clearly advert to the landlord's negligence. We hold that it does not plainly indicate that the parties did intend to immunize the landlord from liability for its own negligence; and there being no indication elsewhere in the instant lease of any such understanding, *Mayfair Fabrics v. Henley, supra,* 48 *N. J.* at 485–489, it cannot be said the parties intended to exonerate the landlord from such liability.

Accordingly, we conclude that the courts below erred in holding as a matter of law that this provision was a complete defense to the allegations of negligence made in the complaint. The judgment is reversed, and the cause is remanded for a trial on the merits of the issues raised in the pleadings.

HALL, J. (dissenting). This court is here called upon for the first time to decide the meaning to be attributed to a broad and bald exculpatory clause common in commercial-industrial leases. The clause reads:

It is expressly agreed and understood by and between the parties to this agreement, that the Landlord shall not be liable for *any* damage or injury to person or property caused by or resulting from steam, electricity, gas, water, rain, ice or snow, or any leak or flow from or into any part of said building, or from *any* damage or injury resulting from any other cause or happening whatsoever. (Emphasis supplied).

The context is that of a lease for one floor of a loft building. It was obviously a fully negotiated bargain. Although a printed form was basically used, numerous changes and additions indicate a transaction thoroughly explored and decided upon, with no element of an adhesion contract imposed upon a business partnership tenant lacking either knowledge or bargaining power. Other provisions place the duty to repair the "interior" of the premises upon the tenant and specifically require it to repair speedily any damage or injury thereto, including glass, at its own cost and expense. While the instrument has no express provision concerning insurance or indemnification, it does permit termination of the lease if the landlord is unable to obtain satisfactory fire insurance on the building and improvements. Taken as a whole, the terms of the bargain on their face clearly indicate that the tenant is to be entirely responsible, *vis-a-vis* the landlord, for its own goods and chattels and the interior of the demised premises and that the obligation is upon it to procure such insurance as it chooses to protect its property.

The record is barren of evidence of any other intent of the parties. The exculpatory clause is certainly not adverse to the public interest, except to the extent of attempting to avoid the landlord's liability for its willful or intentional acts. We have recently said that such clauses in private agreements, providing in effect for distribution of risks and agreed to along and in connection with other terms of the lease, will generally be sustained. *Mayfair Fabrics v. Henley,* 48 *N. J.* 483 (1967). It is inconceivable to me that businessmen in the position of this tenant would not realize and understand the full and broad import of this exculpatory clause, including any damage resulting from the landlord's own negligence, and that the tenant must protect itself by appropriate means. To ascribe to the parties any different intent and contemplation is to fly in the face of common sense and the plain meaning of words and to make a different contract for the parties after the event. Indeed, to exclude non-

liability for the landlord's negligence, when the landlord's willful or intentional acts are also excluded because conderstand the full and broad import of this exculpatory clause, completely nugatory, since it is difficult to conceive of any liability of the landlord which would not fall within one of these two categories.

What the majority appears to hold is that parties to a business lease must be said, as a matter of law, to intend to exclude exculpation of the landlord's negligence, no matter how broad the language used, unless they expressly so indicate or specifically deal with the respective obligations to procure insurance. This, to me, is contrary to the rationale of *Mayfair Fabrics,* in which the exculpatory clause absolved the lessor of liability "for loss or damage to the tenant's property by fire, explosion or otherwise" and made no mention that this broad language included damage resulting from the landlord's negligence (as was claimed to be the cause of the fire loss there). This court rejected the contention that the clause should be deemed inapplicable because it did not specifically refer to actions grounded in negligence, saying "there are no required words of art and, whatever be the language used or the rule of construction applied, the true goal is still the ascertainment and effectuation of the intent of the parties." (48 *N. J.* at 489). While stress was there laid on the fact that the same sentence in the lease also provided that the landlord would insure the building and the tenant all its equipment and personal property (but against loss only by fire), I fail to see how such a provision indicates an intent to exculpate the lessor from liability for damage from all perils caused by its negligence any more than the plain, inclusive language used in the lease at bar. The Appellate Division has very recently so held — and I am convinced, correctly — in considering a broad clause which made no mention either of insurance or the landlord's negligence. *Swisscraft Novelty Co. v. Alad Realty Corp.,* 113 *N. J. Super.* 416 (App. Div. 1971). Judge Lewis there said:

The central question is not whether the parties agreed to insure against loss the risks they severally assumed *inter sese* but, rather, whether they so clearly allocated the risks that each party knew, or should have known, the existence of its contingent liability and was thus placed in a position where it could protect itself against such loss by adequate insurance coverage or otherwise. (113 *N. J. Super.* at 422).

We should not require specific advance danger signals to be hoisted in all business leases simply because this tenant did not protect its property by insurance against steam and water damage.

I would affirm the judgment of the Appellate Division.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR and SCHETTINO—5.

*For reversal*—Justice HALL—1.