LINDA M. SMITH, Plaintiff, v. CLARK EQUIPMENT COMPANY *et al.*, Defendants (Clark Equipment Company, Third-Party Plaintiff-Appellant, v. Paper Salvage Corporation, Third-Party Defendant-Appellee).

First District (3rd Division)   No. 83—1558

Opinion filed September 25, 1985.

Wildman, Harrold, Allen & Dixon, of Chicago (Fred E. Schulz, James R. Morrin, and George F. Fitzpatrick, of counsel), for appellant.

Sweeney & Riman, Ltd., of Chicago (Kevin F. Donohue, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Linda Smith, as administrator of the estate of her deceased husband, William Smith, brought a personal injury action against Clark Equipment Company and Geraghty Industrial Equipment, Inc. Clark, seeking indemnity, filed a third-party action against Paper Salvage Corporation, decedent's employer. The trial court granted Paper's motion to dismiss the third-party complaint for failure to state a cause of action. Clark appeals.

Counts I and II of plaintiff's third amended complaint against Clark alleged that decedent sustained injuries resulting in his death while operating a forklift truck defectively designed, manufactured and distributed by Clark and leased by Geraghty to Paper. The complaint further alleged that the forklift truck was unreasonably dangerous and defective in that the driver overhead guard was capable of being removed; that Clark failed to furnish a load back rest extension; and that Clark failed to issue adequate warnings. The remaining counts related to Geraghty, Clark's authorized rental dealer. Geraghty filed a counterclaim for indemnification against Clark and a third-party complaint for indemnification against Paper.

Clark filed a three-count third-party complaint against Paper seeking indemnification for any liability Clark might incur as a result of the Smith suit or the Geraghty counterclaim. Clark partially based its third-party indemnification action on Paper's breach of the rental agreement between Geraghty, lessor, and Paper, lessee. Geraghty had leased the forklift truck to Paper, with the monthly rentals paid to Clark.

The rental agreement provided in pertinent part:

"14. Care of Equipment.

A. LESSEE agrees to take good care of the equipment in the use, maintenance and storage thereof, and without limiting the foregoing, to keep equipment in a covered area when not in use, to keep equipment clean, to use and operate equipment within its rated capacity, to restrict the use and operation thereof to safe, careful and competent personnel selected, employed and controlled by LESSEE, to assure that equipment is operated with a driver overhead guard and

load back rest installed except when operating conditions prevent their use, to prohibit anyone other than duly authorized personnel of LESSOR from making any repairs or adjustments to the equipment (unless otherwise previously authorized, in writing, by LESSOR); and to notify LESSOR immediately of any accident, affecting the equipment, setting forth all relevant facts, and thereafter promptly to furnish LESSOR, in writing, all information required by LESSOR in connection therewith. LESSEE shall be liable for any and all loss or damage to the equipment due to its failure to observe any of the foregoing."

"7. Liability.

LESSEE assumes all risk and liability arising from LESSEE's possession, use and operation of each unit of equipment from the moment of delivery to LESSEE to the moment of return to LESSOR and agrees to indemnify and hold LESSOR harmless from any and all of the following, whether the same be actual or alleged unless directly caused by LESSOR's negligence: all loss, damage, claims, suits, taxes, liens, penalties, fines, liability and expense (including attorney's fees) howsoever arising or incurred because of such possession, use and operation of equipment including, but not limited to, damages for injuries or death to persons or injury to or destruction of property, claims and liens for storage, labor and materials and all loss of and damage to equipment."

■ Clark initially contends that it can enforce the contract between Geraghty and Paper based on its alleged status as either a party to, beneficiary or assignee of the rental agreement. A party's status with respect to a contract depends on the intention of the parties as expressed by the language of the document and the circumstances surrounding the parties at the time of its execution. (*Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E. 498.) The written agreement between Geraghty and Paper was formalized in a document provided by Clark with the heading, Clark Rental System. Paragraph 3 specified that all monthly rentals be paid to Clark, and paragraph 22 stated that Clark had the right to prior approval of the lease. The shipment of the leased vehicle originated at Clark's warehouse, and the lessee was obligated to return the vehicle there at the lease termination. Although the named parties to the lease agreement were Geraghty and Paper, there were provisions for signatures of those parties as well as approval by Clark.

The pleadings do not show, nor was it alleged, that Clark was a signatory to the lease agreement. Clark does not appear to have obligations under the contract, although it does have the right to receive the monthly rentals and the right to review and approve the lease. If Clark were a party to the agreement, Clark's acceptance would be a prerequisite to the formation of a valid contract and should be evidenced by its signature. (See *Lynge v. Kunstmann* (1981), 94 Ill. App. 3d 689, 418 N.E.2d 1140.) Since Clark is not a named party and not a signatory to the agreement, it is not a party to the contract.

█ Clark, however, is a direct and intended beneficiary of the lease agreement and can bring suit as a third-party beneficiary of the contract. In order for a third party to maintain a suit for breach of contract, the contract must be entered into for the direct benefit of the third party, and the liability of the promisor must affirmatively appear from the language of the instrument. (*People ex rel. Resnick v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 400 N.E.2d 918.) The lease agreement between Geraghty and Paper specifically states that Paper agrees to pay the monthly rentals to Clark. The clear intention of the parties is that the monetary benefits of the agreement accrue directly to Clark through the performance of the contract. (See, *e.g., Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324.) Therefore, Clark is permitted to maintain an action against Paper as a third-party beneficiary of the lease agreement.

█ Clark's third-party action against Paper attempts to state a cause of action for contractual and implied indemnity. Indemnity is a common law doctrine which shifts the entire responsibility from one tortfeasor, who has been compelled to pay the loss, to another tortfeasor who is truly culpable. (*Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 422 N.E.2d 979; Prosser, Torts sec. 51, at 310 (4th ed. 1971).) Indemnity can be express, arising out of the agreement of the parties, implied by operation of law, or implied by the courts based upon the theory of active-passive negligence. (*Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 469 N.E.2d 653.) Clark contends that it is merely attempting to enforce Paper's contractual obligations and is not seeking contractual indemnity in counts I and II. Clark, however, is not seeking contract damages. Clark is seeking to be reimbursed by Paper for Clark's liability which might arise from plaintiff's action for damages for decedent's injuries and death. We view counts I and II as claims for contractual indemnity. Count I seeks indemnity based upon the language of paragraph 14, and count II seeks indemnity through an interpretation of paragraphs 7 and 14.

In count I, Clark alleged that Paper breached its specific contrac-

tual obligation stated in paragraph 14 to maintain the forklift and that pursuant to the liability language in that paragraph, it was entitled to indemnification. In paragraph 14, Paper assured that the forklift would be "operated with a driver overhead guard and load back rest" and assumed liability for "any and all loss or damage to the equipment." Clark further alleged that Paper removed the overhead guard and load back rest and allowed decedent to operate the forklift without those protective devices. Thus, Clark argues that this breach of Paper's contractual obligation establishes its liability for all injuries to decedent which allegedly resulted from the use of the forklift without a driver overhead guard and load back rest.

We first emphasize that the underlying claims against Clark for which it seeks indemnification are grounded upon Clark's strict liability. Clark is charged with having designed, manufactured and distributed an unreasonably dangerous and defective forklift. It is well settled that an agreement will not be construed as indemnifying a party against its own strict liability unless the language of that agreement clearly and specifically shows that this was the intent of the parties. (*Patton v. T.O.F.C., Inc.* (1979), 79 Ill. App. 3d 94, 398 N.E.2d 313; *Sorrentino v. Waco Scaffolding & Shoring Co.* (1976), 44 Ill. App. 3d 1055, 358 N.E.2d 1244.) An agreement for indemnification of a party's own strict liability must be construed strictly against the indemnitee. (*Patton v. T.O.F.C., Inc.* (1979), 79 Ill. App. 3d 94, 398 N.E.2d 313.) Further, in construing an agreement to indemnify, all the language and provisions must be considered as a whole. *Bates v. Select Lake City Theater Operating Co.* (1979), 78 Ill. App. 3d 153, 397 N.E.2d 75.

Viewing the present contract in its entirety, we find the language of paragraph 14 to be plain and unambiguous. The subject of that paragraph is care of the rental equipment. All clauses in that paragraph detail Paper's forklift care obligations. Pursuant to the last sentence of that provision, Paper is liable not for any loss or damage resulting from a breach of any of the care provisions, but rather only for loss or damage to the rental equipment. Paragraph 14 allows nothing more than a simple breach of contract action between Clark and Paper for equipment damages caused by Paper's failure to maintain the equipment with the protective devices installed. It was not intended to be an indemnity clause. It does not shift total responsibility for any injuries resulting from the breach of the equipment care provision from Clark to Paper. Therefore, paragraph 14 does not make Paper responsible for decedent's injuries allegedly caused by the unreasonably dangerous nature of the equipment manufactured by Clark

even if Paper removed the safety devices. It is only under paragraph 7, the general liability provision, that Paper could be liable for "all loss, damage, *** including *** damages for injuries or death to persons" arising out of Paper's use, possession or operation of the forklift.

We are not persuaded by Clark's argument that had the parties intended to limit the liability in paragraph 14 to equipment loss or damage, paragraph 14 would have employed the same language used in paragraph 7, "loss *of* and damage to equipment." (Emphasis added.) There is no requirement that identical language be used throughout a contract. While the use of that language would have been more precise, we believe a fair reading of both paragraphs together compels the conclusion that Paper's liability under paragraph 14 is specifically limited to equipment loss or damage. We conclude therefore that paragraph 14 alone is not a sufficient basis to support a cause of action for indemnification for the injuries and death to decedent. Although Clark may have an action against Paper for equipment damages pursuant to paragraph 14, the complaint herein does not contain any allegations of equipment losses. Where a third-party complaint fails to state a cause of action by the defendant against the third-party defendant, it is properly dismissed. (*Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 234 N.E.2d 790.) The trial court did not err in dismissing count I.

In count II, Clark based its claim for contractual indemnity upon Paper's alleged breach of the same obligation expressed in paragraph 7 which provides in pertinent part:

"LESSEE assumes all risk and liability arising from LESSEE's possession, use and operation of each unit of equipment *** and agrees to indemnify and hold LESSOR harmless from any and all [claims] *** unless directly caused by LESSOR's negligence ***."

Plaintiff alleged that decedent's injuries and death resulted from the use of a forklift without a driver overhead guard and load back rest. Clark therefore contends that Paper's operation of the equipment without the safety devices is a breach of paragraph 14 and that pursuant to paragraph 7 Paper is liable for decedent's injuries.

This court has considered indemnity clauses for potential liability arising from a strict product liability claim in *Sorrentino v. Waco Scaffolding & Shoring Co.* (1976), 44 Ill. App. 3d 1055, 358 N.E.2d 1244, and *Patton v. T.O.F.C., Inc.* (1979), 79 Ill. App. 3d 94, 398 N.E.2d 313. In *Sorrentino*, a worker sued a manufacturer in strict liability for injuries sustained due to defective scaffolding. The manufac-

turer filed a third-party action against the worker's employer for contractual indemnity based upon a lease provision which provided in part:

> "The LESSEE assumes all responsibility for claims asserted by any person whatever growing out of the erection and maintenance, use or possession of said equipment, and agrees to hold the COMPANY harmless from all such claims."

The court found that the express terms of the contract did not require the employer to indemnify the manufacturer for the strict liability claim and upheld the dismissal of the third-party complaint.

In *Patton*, the plaintiff also sought contractual indemnification for its strict product liability from the defendant based upon an indemnity provision in the lease. In addition to defendant's agreement to indemnify plaintiff for claims arising out of the use and operation of the equipment, defendant agreed to indemnify plaintiff for any liability:

> "which may be attributable to any defect in the Equipment arising from the material or any article used therein or from the design, testing or use thereof *** regardless of when such defect shall be discovered ***."

The court held that unlike *Sorrentino* this language was specific and evidenced the clear intent of the parties that defendant would indemnify plaintiff for any liability which might arise from a strict product liability claim.

■ Clark argues that *Sorrentino* and *Patton* are inapplicable to the present case because it is not seeking the enforcement of an indemnity provision, but rather is seeking indemnification based upon Paper's breach of the equipment-care provision. This distinction is without merit. Clark is seeking indemnification for strict liability claims charged against it. Pursuant to *Sorrentino* and *Patton*, the language in the contract must clearly evidence an intent to indemnify Clark for its strict liability claim. The language in paragraph 7 is virtually identical to the language in *Sorrentino* which was held insufficient to evidence an intention to indemnify for strict liability actions. Although Clark alleges a breach of a specific contractual provision, there is nothing in the contract that evidences the parties' intention that Paper would indemnify Clark or Geraghty for any liability arising from a strict product liability claim. Considering the provisions of the agreement as a whole, there is no indication that Paper agreed in paragraph 7 to assume liability for all losses arising from its use of the forklift without the protective devices specified in paragraph 14, where indemnity is sought for a strict product liability claim.

■ Clark finally attempts to state a claim for implied indemnity

in count III based upon a theory of active-passive negligence. Clark alleged that Paper's negligent conduct in removing the driver overhead guard and load back rest, allowing the decedent to operate the forklift in that condition, and failing to train the decedent properly in the safe operation of the forklift was the direct and proximate cause of decedent's injury.

In order to state a cause of action for implied indemnity, a third-party complaint must allege that a pretort relationship existed between the third-party plaintiff and the third-party defendant, and that there was a qualitative distinction between the conduct of the third-party plaintiff and third-party defendant. (*Van Slambrouck v. Economy Baler Co.* (1985), 105 Ill. 2d 462, 475 N.E.2d 867.) Clark's amended third-party complaint alleged that Paper's use of the forklift resulted from the lease agreement with Geraghty. In view of our holding that Clark was a third-party beneficiary of the lease agreement, we find that Clark sufficiently alleged a pretort relationship with Paper. See *Wheeler v. Ellison* (1984), 124 Ill. App. 3d 852, 464 N.E.2d 857.

With respect to the qualitative distinction in conduct between the parties, a manufacturer sued in strict liability has not been able to seek indemnity against a "downstream" employer-user, such as Paper in the present case. (*Kossifos v. Louden Machinery Co.* (1974), 22 Ill. App. 3d 587, 317 N.E.2d 749; *Burke v. Sky Climber, Inc.* (1973), 13 Ill. App. 3d 498, 301 N.E.2d 41, *aff'd on other grounds* (1974), 57 Ill. 2d 542, 316 N.E.2d 516.) The active-passive negligence theory of indemnity allowed a less culpable passively negligent tortfeasor to shift the loss to the actively negligent tortfeasor who primarily caused plaintiff's injury. (*Moody v. Chicago Transit Authority* (1974), 17 Ill. App. 3d 113, 307 N.E.2d 789.) The active-passive theory, however, did not apply to cases of strict liability because public policy required that the loss be borne by the manufacturer who placed the defective product in the stream of commerce and reaped the profit. *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 338 N.E.2d 857; see *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792.

There has been considerable discussion as to whether our supreme court's holding in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *cert. denied sub nom. Hinkley Plastic, Inc. v. Reed-Prentice Division Package Machinery Co.* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849, and its companion cases, *Stevens v. Silver Manufacturing Co.* (1977), 70 Ill. 2d 41, 374 N.E.2d 455, and *Robinson v. International Harvester Co.*

(1977), 70 Ill. 2d 47, 374 N.E.2d 458, eliminated the prohibition against downstream indemnity actions involving manufacturer and employer. (See *Van Slambrouck v. Economy Baler Co.* (1985), 105 Ill. 2d 462, 475 N.E.2d 867.) Since *Skinner* allowed a manufacturer sued in strict product liability to seek contribution from an allegedly negligent employer, it is argued that indemnity should also be allowed. We need not reach the merits of this contention, because the holdings of *Skinner* and its companion cases were specifically made applicable to causes of action arising on or after March 1, 1978. In this case, decedent sustained injuries in an accident occurring on August 19, 1974, which resulted in death on January 11, 1975. Therefore, the trial court properly applied the law in force prior to *Skinner* and dismissed this count of Clark's indemnity action.

For the foregoing reasons, the judgment of the circuit court of Cook County dismissing Clark Equipment Company's third-party complaint against Paper Salvage Corporation is affirmed.

Judgment affirmed.

WHITE, P.J., and McGILLICUDDY, J., concur.