**Helen KANE, Plaintiff,**

v.

**THE BOC GROUP, INC., Defendant,**

v.

**QUALITY FOODS COMPANY,
Third–Party Defendant.**

**No. Civ.A. 95–3147.**

United States District Court,
E.D. Pennsylvania.

Jan. 16, 1998.

Gina Furja, Kenneth Michael Rothweiler, Alan Gordon, Philadelphia, PA, for Plaintiff.

Lisa A. Watkins, Mary E. O'Laughin, Anthony J. Wakins, Michael G. Conroy, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff, Helen Kane ("Kane"), was injured January 4, 1995 while employed at Quality Foods Company ("Quality") in Camden, N.J. Her right arm was caught in a refrigerated screw auger leased by Airco Industrial Gases ("Airco") to Quality pursuant to a written lease agreement ("the Agreement"). Kane's arm was amputated as a result of the accident. Kane received worker's compensation benefits for her injuries and commenced a third-party action against defendant/third-party plaintiff The Boc Group, Inc. ("BOC"), the corporate parent of Airco. Kane alleged negligence, products liability, and breach of warranty claims against BOC. BOC joined Quality as a third-party defendant. In its third-party complaint BOC sought indemnification from Quality pursuant to provisions in the Agreement which BOC claims explicitly entitle BOC to indemnification from Quality.

BOC settled Kane's claim before trial. I entered a new scheduling order for resolution of BOC's claim against Quality. Each party filed a summary judgment motion on May 7, 1997. I held oral argument on the motions on December 16, 1997.

The parties agree that the dispositive issue in these cross motions is whether under New Jersey law the language of the Agreement entitles BOC to indemnification by Quality. (Tr. 12/16/97 at 5–7, 16, 20; 10/16/96 at 23). The parties further agree that the issue is entirely a matter of law for me to decide. (Tr. 12/16/97 at 5; 10/16/96 at 7–8).[1] Because the language of the Agreement is insufficient as a matter of law to require Quality to indemnify BOC, I will grant the motion of Quality for summary judgment and deny the motion of BOC.

■ The New Jersey Workers' Compensation Act ("the Act") governs the rights and duties of an employee and employer as well as any third party tortfeasor with respect to any work-related injury. *See Ramos v. Browning Ferris Indus.*, 103 N.J. 177, 510 A.2d 1152, 1155 (1986). As the New Jersey Supreme Court has stated, the Act is "built upon the principle that it provides the exclusive remedy against the employer for a work related injury sustained by an employee". *Id.* In order to effectuate the policies of the Act, third-parties are prohibited from seeking contribution from an employer for an employee's injuries, regardless of the com-

---

1. If the Agreement indemnifies BOC, a further hearing must be held concerning the reasonableness of the settlement. If the Agreement does not indemnify BOC, then Quality is entitled to summary judgment.

parative liability of the third-party and the employer. *See id.* at 1155–56. Even though in some cases holding the third party tortfeasor solely responsible for a workplace injury "may seem unfair", the New Jersey Supreme Court has decided that granting a right of the third party to recover contribution would subvert the Act's clear intent to restrict employer liability. *Id.*[2]

■ The same policies of the Act which insulate employers from third party contribution also require that third party claims of indemnification from employers be recognized only if they are unequivocally expressed. *Id.* at 1159. The New Jersey Supreme Court has held that if the meaning of a clause in a supposed indemnification agreement is ambiguous, the clause must be strictly construed against the indemnitee. *See id.* In addition, although a party may be indemnified for its own negligence pursuant to an express agreement, "a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." *Id.*[3] The requirement of unambiguous, unequivocal language indicating the intent to so indemnify prevents the subversion of the exclusivity provisions of

the Act. *See id.; See also Stephenson,* 510 A.2d at 1161.[4]

New Jersey courts have assumed that "unequivocal terms" does not require "specific mention of the indemnitee's negligence". *Gulf Oil v. ACF Industries, Inc.,* 221 N.J.Super. 420, 534 A.2d 1025, 1030 (1987) (applying *Ramos*). However, counsel have cited no New Jersey decision that has held the "unequivocal terms" have been satisfied without other "specific" language clearly indicating that the intent was to so indemnify. As the New Jersey Superior Court put it, "Under *Ramos* and the several cases there cited, there must be language unequivocally *including* the indemnitee's negligence." *Id.* (emphasis added). This language has taken the form of language that, for example, specifically notes the indemnification includes coverage for any "defect", or that the agreement covers any claim resulting from an injury "whether occasioned" by the indemnitor or indemnitee. *See respectively Gulf Oil,* 534 A.2d at 1029–1030 (dicta); *Cozzi v. Owens Corning Fiber Glass Corp.,* 63 N.J.Super. 117, 164 A.2d 69 (N.J.Super.Ct.App.Div.1960). In short, due to the importance of maintaining the exclusive remedies of the workers compensation regime, I

---

2. Because of the exclusivity provisions of the Act the right to an implied indemnity exists, if at all, only under the most narrow of circumstances. In *Ramos* and its companion case *Stephenson,* the Supreme Court of New Jersey restricted the right of implied indemnity to extremely narrow circumstances, which I find and as agreed by the parties, are not present in this case. The right to seek implied indemnity rests on three factors all of which the third party must prove: (1) lack of fault (2) a "special relationship" and (3)vicarious liability. *See Stephenson v. R.A. Jones,* 103 N.J. 194, 510 A.2d 1161 (1986).

3. For purposes of such agreements under New Jersey law, indemnification for a latent design defect may be "the functional equivalent" of an indemnification for negligence, obviating the need for specific reference to a "defect" if there is other specific language sufficient to indemnify for negligence. *Gulf Oil v. ACF,* 221 N.J.Super. 420, 534 A.2d 1025, 1029 (1987). I will use the term "negligence" to refer to all of BOC's potential liability.

4. In establishing this rule of interpretation in the Workers Compensation context the *Ramos* court relied on a similar general rule of contract inter-

pretation requiring unambiguous language to create an indemnity agreement indemnifying the indemnitee for the indemnitee's own negligence. *Id.* (citing *Cozzi v. Owens Corning Fiber Glass Corp.,* 63 N.J.Super. 117, 164 A.2d 69 (N.J.Super.Ct.App.Div.1960), among other cases). *Ramos* has in turn been applied by the Superior Court to establish a rule of interpretation for indemnification agreements that applies outside the workers compensation context. *See Gulf Oil,* 534 A.2d at 1025. Based on this general rule of contract interpretation, I also find the language of the Agreement is insufficient to create an indemnification for BOC's own negligence even without the operation of the Act. Although the rationale for this traditional rule of contract interpretation is uncertain outside the workers compensation regime, other courts have suggested that the rule reflects the exceptional nature of such indemnification agreements, namely, "[t]he liability [potentially created by such an] indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond all doubt by express stipulation. No inference from words of general import can establish it." *Perry v. Payne,* 217 Pa. 252, 66 A. 553 (1907).

must be convinced by specific language in the agreement that the employer contemplated being liable for his own negligence and accepted the extraordinary liability connected with waiving its immunity from suit.[5]

The specific language in the agreement relied upon BOC to support its claim is contained in two paragraphs. Paragraph 3, entitled "User's Responsibilities," reads, in pertinent part:

> ... User shall bear all risk of loss of damage to the Equipment and shall indemnify Airco [BOC] against all costs, claims and liabilities for personal injury or property damages in any way connected with any use or possession of the Equipment....

Paragraph 7, entitled "Allocations of Responsibility," reads:

> Except to the extent specifically provided otherwise elsewhere herein, Airco [BOC] shall not be liable for any claim, liability, damage, loss or expense, whether consequential, special, incidental, direct or otherwise, (including, without limitation, loss of use or loss of production), caused by, arising out of or connected with any failure of or use of the Equipment during the time User has the right to possession or use of the same hereunder (or while the same is on the Location or any other Location as a result of any act, request or consent of User) whether or not resulting from negligence or from breach of contract on the part of Airco.

■ The broad language of Paragraph 3 of the Agreement indemnifying BOC "against all costs, claims and liabilities for personal injury or property damages in any way connected with any use or possession of the Equipment...." does not clearly and unambiguously indicate that it is intended to include indemnity claims resulting from or caused by BOC's own negligence. Although specific mention of BOC's "negligence" may not be required to establish a right to in-

demnification, the agreement does not contain any language indicating this intent. In addition, since the separate exculpatory provisions of this Agreement (contained in paragraph 7) explicitly state that exculpation extends to liability "whether or not resulting from negligence or breach of contract of [BOC/Airco]", the absence of similar language in Paragraph 3 is an indication that the indemnification for BOC's own negligence was not intended.

Paragraph 3's indemnity language is also ambiguous because it relates only to incidents connected with the "use or possession" of the equipment. As in *Ramos* it is unclear whether this indemnity is intended to apply to injuries or damages stemming from defects or negligence which took place before Quality had "use or possession" of the equipment or which could be considered unconnected with the use and possession of the equipment. *See Ramos,* 510 A.2d at 1160. Moreover, this clause's emphasis on the claims connected with the temporal period of "use and possession" could easily lead to the conclusion that it was intended only to cover claims resulting from the negligence of Quality as the user or possessor. *See Carvalho v. Toll Bros. and Developers, et al.,* 278 N.J.Super. 451, 651 A.2d 492 (1995) and *Meder v. Resorts Int'l Hotel,* 240 N.J.Super. 470, 573 A.2d 922 (1989) (holding that temporal language referring to claims "arising out of the construction" or "performance", respectively, could limit the scope of indemnification to incidents of the indemnitor's own negligence).[6]

■ Paragraph 7 also does not establish BOC's right of indemnity. By its plain language, Paragraph 7 is a "limitation of liability" or "exculpatory clause", not an indemnification clause. *See, e.g., Jamison v. Johnson,* 420 F.2d 787, 789 (3d Cir.1970) (distinguishing limitation of liability from exculpatory clauses); *Barrera v. International Thoroughbred Breeders, Inc.,* 1992 WL 396778

---

**5.** It would seem to me that at the very least to hold any employer liable for indemnification the language must reflect that the employer had focused on the fact that under the indemnity clause it was writing away the exclusivity provisions of the Act.

**6.** The language certainly gives no indication that Quality focused on the fact that it was writing away the exclusivity provisions of the Act.

(E.D.Pa.1992) (holding a limitation of liability clause falls short of being an indemnification provision); *Smith v. Clark Equipment Co.,* 136 Ill.App.3d 800, 91 Ill.Dec. 520, 483 N.E.2d 1006 (1985) (interpreting a contractual clause to be a limitation clause and not a indemnity clause; *Topp Copy v. Singletary,* 533 Pa. 468, 626 A.2d 98 (1993)) (distinguishing between the specificity of language required in a exculpatory clause versus an indemnification agreement).

**AND NOW,** this 16th day of January, 1998, **IT IS ORDERED** that third-party defendant Quality Food's motion for summary judgment is **GRANTED.** The BOC Group Inc's motion for partial summary judgment is **DENIED.** Judgment is entered in favor Quality Foods and against the BOC Group Inc.