Glencoe State Bank, Appellant, v. Edwin R. Cole et al., Appellees.

Gen. No. 8,358.

Heard in this court at the May term, 1931. Opinion filed February 18, 1932.

H. C. RUMERY and LITCHFIELD & SNYDER, for appellant.

ALTHEIMER & MAYER, for appellee North Shore Bond & Mortgage Co.; WALTER B. SMITH and GEORGE W. STRUCKMANN, of counsel.

R. B. WEBSTER and LOUIS P. MILLER, for appellee George Park.

MR. JUSTICE BALDWIN delivered the opinion of the court.

This was a bill in chancery brought by Glencoe State Bank, hereinafter called "complainant," to foreclose the lien of a certain trust deed made by Cole and his wife. Various mechanic lien claimants were made defendants, as was also the North Shore Bond and Mortgage Company, hereinafter called "cross complainant," it being the holder of a trust deed conveying the same premises. The lien claimants filed their answers in the nature of intervening petitions seeking to enforce their liens. The cross complainant filed a cross-bill seeking to have the lien of its trust deed foreclosed and held superior to that of complainant by reason of certain statements claimed to have been made by officers of complainant and acted upon by cross complainant.

The original cross-bill of cross complainant stated substantially that complainant had agreed to disburse the loan made to Cole so as to cause the erection of the proposed building, free of mechanic's liens, and upon the hearing before the master the testimony was that the complainant told the cross complainant that it would make the loan for the building if cross complainant, which already had a first mortgage, would subordinate its lien to this loan to which cross complainant agreed and accordingly withheld its trust deed from record until complainant's trust deed was filed.

It appears that Cole was a builder and had made several loans from complainant. In the summer of 1928 he had dealings with cross complainant, as a re-

sult of which cross complainant bought for him a lot in Highland Park and took back a purchase money mortgage for its cost. Cole was to obtain a loan and erect a building and he entered into negotiations with complainant for a loan for the purpose of erecting a building on this lot and during the pendency of the negotiations a representative of cross complainant went to the office of complainant and told complainant that he understood complainant was making a loan to Cole for the purpose of erecting a building on this loan and that he wanted to be sure as to the purpose for which the loan was being made, and was informed by an officer of complainant that a loan of $10,000 was being made, or considered, by complainant for the purpose of putting a building on that lot and the officers of complainant asked the representative of cross complainant if it would subordinate its purchase price loan to theirs if the loan was made to put up the building, and the representative of cross complainant stated that it would, and it further appears that cross complainant relied upon this understanding. The loan of $10,000 by complainant to Cole was made and the trust deed securing it, which is now sought to be foreclosed, was executed and placed upon record. Cross complainant withheld from record its trust deed until after complainant's trust deed had been recorded.

The building was begun, but was not completed. Cole testified that not more than $3,000 of the $10,000 loan was used in the building. It was not denied that he received all the money, but what use he made of it is not disclosed. The mechanics and materialmen, who seek a lien, remain unpaid. Default was made by Cole of interest and taxes and complainant elected to declare the entire amount due and filed its bill to foreclose and made various lien claimants and the cross complainant defendants; all defendants answered and filed appropriate pleas, a receiver was appointed by the court with authority to complete an unfinished

building and he obtained authority to issue and sell receiver's certificates to the amount of $7,500 and these were sold to complainant and the proceeds were used to complete the building. The order authorizing the certificates provided that they should be a lien upon the premises superior to all other liens.

The cause was referred to the master in chancery and he found that the lien of cross complainant was subordinate to the lien of complainant, and that George Park, one of the lien claimants, had no lien as against incumbrances and purchasers. Other findings with reference to other lienholders in this report are not material here as the parties have reached an adjustment of those matters and they are not now in question.

Objections were filed to the master's report and were ordered to stand as exceptions thereto, and upon the hearing before the court the exceptions of George Park and of cross complainant were sustained and a decree was entered finding due the complainant the sum of $12,497.87 and costs, and ordering a sale of the premises. It found due the cross complainants the sum of $2,699.17 and found its lien to be superior to that of complainant on the ground involved, but subject to that of complainant on the building on said premises. The decree found that George Park had a lien for $1,000 and that other claimants were entitled to liens. The decree found further that various mechanic's liens were subject to the lien of the receiver's certificates and to the lien of the trust deeds to the extent of the value of the premises on the date the respective contracts were entered into and reserved for future computation the exact amounts due the various parties.

At the time the court heard the exceptions to the master's report and rendered his decision thereon, cross complainant asked leave of court to amend its cross-bill to conform to the proof, which leave was granted and no objection made thereto by complainant

and shortly thereafter a cross-bill conforming to the proof before the master was filed and among the errors urged by complainant it is claimed that the court erred in allowing the cross-bill to be amended. The facts as shown by the record with reference to the claim of George Park are substantially as follows: On or about August 15, 1928, the owner of the premises involved entered into a contract with Park to install plumbing, gas and sewerage for the price of $1,500, said contract being reduced to writing and is undated. Park proceeded with his work until December 1, 1928 when, without his fault, further work was discontinued by the owner. On January 24, 1929, Park filed his claim for lien basing it upon the contract alleging $1,450 due him and averring completion of the contract. Upon the hearing before the master upon this claim it was claimed that an error had been made in the statement and answer filed thereon and later an intervening petition as amended was filed claiming that the reasonable value of the work performed under the contract to December 1, 1928, was $1,000. The master found that the claim of Parks should be disallowed because his statement was not "certified." The court, upon hearing the exceptions, overruled the master and allowed the claim in the amount of $1,000.

The complainant prayed an appeal to this court and alleges that the decree is erroneous in its findings as to the relative rights of complainant and cross complainant; that the particular relief given cross complainant is not justified and that the court erred in finding George Park has a lien upon the premises as against complainant.

We shall first take up for consideration the claim for lien by George Park. The complainant contends that his claim was not verified by proper affidavit and that the claim does not state the amount due and is materially false.

The lien law requires claimant to file a statement of claim verified by affidavit. The affidavit in this case begins, "George Park, being first duly sworn, deposes and says, etc.," and on the line upon which the deponent usually signs is the name "George Crosby" and the jurat "Subscribed and sworn to before me" is signed "George Crosby." Crosby is the officer before whom the affidavit was sworn. It appears from an inspection of the records that Crosby signed the affidavit and also the jurat. The evidence discloses at page 121 of the record (not abstracted) that a witness was present when the statement of claim was signed and "acknowledged" by claimant. The word "acknowledged" was apparently inadvertently used by the solicitor in his question instead of the word "sworn."

Objection to the introduction of this statement was made on the ground, among others, that it was not sworn to.

Where an inspection of the document itself presents a doubt as to whether or not it was sworn to by claimant, then it is proper to produce proof *aliunde* that the statement was in fact sworn to. *Cox v. Stern,* 170 Ill. 442.

The statute, Cahill's St. ch. 82, ¶ 7 (section 7, chapter 82, Smith-Hurd 1931), provides in substance that the claimant shall file a claim for lien verified by the affidavit of himself, etc.

An affidavit has been defined to be a written declaration on oath, sworn to by the person making it, before some officer duly authorized by law to administer oaths. 1 Encyclopedia of Pleading and Practice 309; *Harris v. Lester,* 80 Ill. 307.

The statute does not, and neither do the decisions cited to us upon the question require that the affidavit be "signed"; the only requirement is that it be sworn to. The jurat in this case states that the affidavit was

"subscribed and sworn to, etc." The statement itself was signed in the appropriate place by George Park, the claimant.

The document was properly admitted in evidence.

It is claimed the statement filed does not state the amount due and that it is materially false.

The statement filed in this case was apparently made out on a printed blank such as is generally used for such purposes, claimant filling in blanks to suit his supposed conditions. Instead of setting up items of the value of material and labor delivered to the owners, he set up that his claim for lien rested upon a contract in the sum of $1,450, and that the contract was completed December 1, 1928, and the answer of claimant in the nature of an intervening petition, filed, followed this theory. On the hearing before the master the following took place (see record page 117):

"MR. WEBSTER: If the master please, I just today learned that Mr. Park had not completed the work he was about to do. I filed a claim for lien and in the intervening petition I set up the amount of the contract.

"MASTER: You wish to amend, is that it?

"MR. WEBSTER: Yes.

"MASTER: Go ahead and put in your testimony."

The claimant then proceeded with his testimony as though the amendment had been made and it was proven that $1,000 worth of material and labor had gone into the building under the contract up to December 1, 1928, when further work was abandoned. Later on an amended intervening petition was filed, setting up that $1,000 worth of work and labor was claimed, etc.

A portion of Cahill's St. ch. 82, ¶ 7 (section 7, chapter 82, Smith-Hurd 1931), provides as follows: "No such lien shall be defeated to the proper amount thereof because of an error or overcharging on the part of

any person claiming a lien therefor under this Act, unless it shall be shown that such error or overcharge is made with intent to defraud.''

It nowhere appears in the record, other than the mere filing of the claim, based upon the contract price of $1,450, whereas (the contract which was introduced in evidence specified $1,500 (abstract 14), instead of basing the claim upon the value of the work that had been done up to the time further work was prevented · as is provided by section 4 of the Liens Act, Cahill's St. ch. 82, ¶ 4), that the claimant intended to defraud any interested party.

Our courts have held that, where a claimant under the lien law seeks to perpetrate a fraud, then his lien shall be denied; but an examination of the cases cited upon this question discloses that the fraud acted upon in those cases arose, not only out of the filing of the claim for a larger amount, but that, upon the hearing, testimony was offered to support such purported claim.

The cases cited by claimant, *Christian v. Allee,* 104 Ill. App. 177, and *Marsh v. Mick,* 159 Ill. App. 399, are to be distinguished from this case in that, in each of those cases the respective claimants were found, from the evidence in the case, to have offered false and perjured testimony in support of their claims, and that it was deliberately and wilfully made in order to prejudice interested parties and their liens were denied upon that ground and not upon the ground that the lien notice or the pleadings were in error.

The facts in the instant case do not extend that far in our judgment. We, therefore, hold that the amount due—though a mistaken one based upon an improper premise—was substantially stated and that as soon as the mistake was discovered, i. e., upon the day of the hearing, an attempt to correct the error was made and tacit consent to do so was given by the officer hearing

the testimony and no objection was interposed by the complainant.

It is not contended that the actual work was not done, nor that the materials did not enter into the building, nor that $1,000 was not a reasonable and fair price for such labor and materials. Further, no showing is made that complainant was harmed or prejudiced by claimant's action in the matter. The offer to correct the statement was made at the hearing, which was still open, and opportunity was afforded complainant to meet such proof as was offered. *Hayes v. Hammond,* 162 Ill. 133; *Kendall v. Fader,* 199 Ill. 294; *Treloar v. Hamilton,* 225 Ill. 102.

We are, therefore, of the opinion that the chancellor decided correctly that Park was entitled to a lien for $1,000 as shown by the proof.

The appellant contends that the court erred in granting cross complainant leave to amend its cross-bill.

It appears from the record that the amendment to the cross-bill was sought by cross complainant at the time its exceptions to the master's report were heard and decided by the court and leave was given by the court to amend, no objections by complainant being offered. (Abstract 16.)

The statute, Cahill's St. ch. 22, ¶ 37 (section 37, chapter 22, Smith-Hurd 1931), grants authority to the courts to permit amendments to bills, etc., upon such terms as the court deems proper so that neither party may be surprised nor unreasonably delayed, and it has been repeatedly held by our courts that parties, before final decrees, may be permitted to amend their pleadings to conform to proofs and that such permission is regarded as an exercise of the sound discretion of the chancellor.

Nothing is shown in this record of any objection by complainant to this action of the court, nor is there any claim that the complainant was thereby surprised or

in any manner unreasonably delayed. The action of the court in permitting the cross-bill to be amended before decree is approved. *Ackley v. Croucher,* 203 Ill. 530, 534; *Sanner v. Sanner,* 257 Ill. App. 305, 324.

Two cases, *Jones v. Kennicott,* 83 Ill. 484 and *Campbell v. Powers,* 139 Ill. 128, were cited by complainant, in its brief, to sustain its contention that the court erred upon this point.

The *Jones* case was a *ne exeat* case and the application for permission to amend came after the writ was quashed because the petition failed to allege a material averment and the defendant was no longer in court.

The *Campbell* case was a bill for an injunction, such bills being required by law to be verified and the courts move with greater caution in allowing amendments to sworn bills. In the instant case, the cross-bill is not one of that character and, therefore, greater liberality may be indulged in by the courts in the exercise of a proper discretion.

The amendment to the cross-bill was filed soon after the chancellor sustained the exceptions of cross complainant to the master's report and considerable time before the entry of the decree. Ample time was therefore afforded complainant, either to object to the action of court, or to take steps to obviate the effect of the amendment.

The remaining question in this record to be disposed of is the one raised as to the respective priorities of the respective trust deeds as to their participation in the proceeds of the sale of the premises.

It is stated in the briefs that there are no decisions in this State upon the points involved and reference is made to the reports of other States for guidance.

It is contended by complainant that under the facts as stated, it owed no duty to cross complainant to see to the application of the proceeds of its loan towards the payment of costs of the construction of the build-

ing; that admitting for the purpose of the argument, it was negligent in so disbursing the fund, cross complainant was equally negligent and, lastly, if cross complainant is entitled to any relief, it is not that given by the decree, but that the relief, if any, to be given it, is to decree that it should share after the payment of liens, receiver's certificates, costs and amount due first mortgage less such liens and receiver's certificates.

Cross complainant urges in support of the decree: 1. Complainant stated to and agreed with cross complainant that it would make a building loan to Cole if cross complainant would subordinate its purchase money mortgage to the proposed building loan and relying thereupon it subordinated the lien of its mortgage. 2. Having made such statement and agreement and knowing that cross complainant acted in reliance thereon, complainant was obligated to apply the proceeds of its loan to the costs of constructing the building. 3. Cross complainant had a right to rely upon complainant performing its duty in that respect and cannot urge that cross complainant should have done the things complainant was under obligation to do. 4. The decree, in so far as it determines the rights of cross complainant, should be affirmed, because: (a) Where the record on appeal does not show affirmatively that it contains all the evidence heard in the trial court, the court of review will not go behind the decree; (b) the decree makes findings of facts sufficient to sustain the decree as to cross complainant, and, (c) even should the Appellate Court go behind the decree there is sufficient evidence in the record to sustain it.

There seems to be no doubt but that the conversation between complainant and cross complainant, through its officers, occurred as set forth in the foregoing statement of facts, and that it was so understood by complainant is evidenced by the testimony of the witness Armour Park, who testified he went to the bank of

complainant to draw money on some building job, and who was told by a representative of complainant that the complainant was making a loan to Cole on two more houses for him and that he, Park, would get his money on those two in the same manner as he received the money for which he went to complainant's bank. We are to decide the legal effect of these facts.

It appears to us that complainant, knowing cross complainant had a purchase money mortgage, stating and agreeing with cross complainant that it would make a building loan of $10,000 provided cross complainant would subordinate its first mortgage to that of complainant's, thereby impliedly placed itself under obligation in equity and good conscience to so apply all the proceeds of the loan to the costs of the building construction. That course of action was only fair and promotive of common justice as between them. The record discloses that only $3,000 of the proceeds of this loan went into building costs and the record is silent as to what became of the remainder of the loan except that it went to Cole and was presumably used by him for other purposes.

The parties here did not reduce their understanding to writing, nor did they agree to check upon the other as to performance of what each was to do. The cross complainant delayed filing its trust deed until after complainant's trust deed was filed and cross complainant having done what it had agreed to do had a right to rely upon complainant doing what it had impliedly agreed to do, as we hold and as the chancellor found, that it was to use the proceeds of the loan to discharge building costs to the extent of the loan. Under the circumstances as they appear in this case, we are of the opinion that in making the building loan, equity imposed a duty on the mortgagee to apply the proceeds of the loan on the costs of construction of the building.

We are referred in the brief of cross complainant to the case of *Equitable Savings & Loan Ass'n v. Hewitt,*

67 Ore. 280, 135 Pac. 864, as bearing upon the point. We have examined the case and the facts in that case were as follows: The defendant, Mrs. Wright, purchased a lot, and, desiring to build a dwelling thereon, entered into a contract with defendant Shay to build a house for the sum of $3,000. At his request Mrs. Wright was to have the lot conveyed to defendant Hewitt in trust, for the purpose of negotiating a loan of $2,500 from the plaintiff, payable in monthly instalments. This was done, and thereupon Hewitt conveyed the property to Mrs. Wright, subject to the mortgage. Shay then sublet the contract to build the house to Hewitt. It is alleged by defendant Mrs. Wright that the loan was made with full knowledge that it was negotiated for her for the purpose of building the house, and that the plaintiff was to hold the money and to direct the payment thereof upon the cost of the erection of the building for her, etc. Before the house was complete, Hewitt abandoned it. He drew all the $2,500 loan from the plaintiff, and left many bills unpaid.

It will be seen that in the Oregon case it was alleged that the loan association was to hold the money and to direct the payment thereof towards the building costs. On page 283, the court said:

"When plaintiff made the loan and accepted the mortgage, it did not deliver the money either to Hewitt or to defendant Mrs. Wright, but retained it for its own protection against liens on the mortgaged property. The property evidently was a vacant lot, and the building of the house was contemplated by plaintiff as a basis for making the loan. Otherwise, it would not have made the loan. Therefore, for its own protection, as well as for the protection of the owner, it should have diligently paid the money only upon the expense of the erection of the dwelling." And again on page 284: "When plaintiff undertook to hold the

money to see that it was paid out to the proper parties, it was responsible for not doing it.''

The Oregon case is predicated upon an allegation of an express agreement on the part of the loan association to hold the money and pay it out on building costs, while in the instant case there was no such express agreement, yet we believe under the facts in the instant case, there was raised an implied duty on the part of complainant in this respect and was as complete as though it had been expressly agreed.

On the question of the apportionment of complainant's lien of $3,000 between land and improvements, *Joralmon v. McPhee,* 31 Colo. 26, 71 Pac. 419, is cited.

We find the facts of this case fairly stated in the cross complainant's brief, pages 19 and 20, and they are as follows: One Snell owned vacant lots subject to a first mortgage of $2,000 and a purchase money second mortgage of $4,000 owned by one O'Donnell. Snell, desiring to erect a building on the lots, obtained loans totaling $8,000 from Tooker and Joralmon, the proceeds of the $8,000 loan to be applied, first, on the discharge of the existing $2,000 first mortgage and the remainder to the construction of a building. In reliance upon this arrangement, O'Donnell released the purchase money mortgage and took back a new third mortgage of $4,000, subject to the Tooker and Joralmon mortgage for $8,000. Tooker and Joralmon thereupon entered into a building contract with Snell for the erection of a building. It was presumed that the proceeds of the $8,000 loans were applied to the discharge of the original $2,000 first mortgage and $2,770.10 thereof were used in paying for labor and material. The remainder apparently was paid directly to Snell and did not go into the building. Various parties furnished materials, and, not having been paid, filed liens and commenced actions of foreclosure. The court found that Tooker and Joralmon were entitled to a first lien on the lots to the extent of $2,000, the

amount of the original first mortgage which was discharged from the proceeds of the loan. The opinion found that they were entitled to a lien for $2,770.10 upon lots and buildings prior to O'Donnell's third mortgage, because to that extent the value of the O'Donnell lien had been increased, the court saying: "but this lien upon the building is limited to this sum because it is all that has been advanced for the purpose of constructing it." O'Donnell was therefore decreed to have a second lien upon the land for $4,000, subject to a $2,000 prior lien and a $4,000 lien upon both lots and buildings subject to the prior lien of $2,000 on the land and prior lien of $2,770.10 on the buildings.

The cross complainant having relinquished its first lien, relying upon the statement and agreement and the resultant implied duty of complainant, as we hold, arising therefrom, and it not having been extinguished by payment out of the proceeds of complainant's loan, is entitled to be allowed to be a first lien upon the lot in question. Complainant by reason of having expended $3,000 upon the building is, in equity, by the same token, entitled to have a first lien upon the building. It therefore follows that complainant would be entitled to have a second lien upon the lot for $12,497.87 and costs, subject to the prior lien of cross complainant for $2,699.17 and cross complainant should have a lien upon the building for $2,699.17, or so much of it as remains unpaid, if any, after payment from that portion of the proceeds of sale apportioned to the lot, subject to a first lien of complainant to the amount of $3,000 and interest (that being the sum it advanced from the loan on building costs).

It appears that the building on the lot in question has been completed out of funds raised from the sale of receiver's certificates which are declared to be, by the decree appealed from, a first lien and held properly so.

Thereupon it would equally be true that it would be destructive of the interests of the parties to direct a sale, which would permit the purchaser to remove the improvements. Inasmuch as the liens as we have found them attach separately to improvements and to the lots themselves, the proceeds must be divided accordingly by ascertaining the value of the improvements separate and apart from the lot and the value of the lot without the improvements. (*Joralmon v. McPhee, supra.*)

The decree entered in this case by the chancellor, and which is brought here for review, is in accord with the views of this court as expressed herein and contains this clause, to wit: "And the court reserves for future computation and determination the value of the ground as distinguished from the buildings thereon, and the exact amounts due hereunder to the various parties found to have liens upon said premises and reserves for future consideration the taxation of costs between the parties." And upon the matters thus reserved we do not by what has been said herein intend to express any opinion on the questions thus reserved.

The record in this case was made up from a praecipe and upon its face does not purport to contain all of the record, and therefore the presumption arises that there were sufficient facts in the record to support the decree. *Allen v. Henn,* 197 Ill. 486.

Upon a careful reading of the record and the decree, we are satisfied it finds sufficient facts upon which to support the decree, at least in so far as complainant, cross complainant and claimant Park are concerned, quite aside from the presumption obtaining as aforesaid.

The decree is therefore affirmed so far as it relates to the matters herein decided.

*Decree affirmed.*