348 So.2d 59 (1977)
INDIANA MORTGAGE & REALTY INVESTORS, a Maryland Business Trust, Appellant,
v.
PEACOCK CONSTRUCTION COMPANY, Appellee.
No. 76-1735.
District Court of Appeal of Florida, Second District.
July 13, 1977.
As Corrected July 19, 1977.
Rehearing Denied August 11, 1977.
William C. Martin, III of Akerman, Senterfitt & Eidson, Orlando, for appellant.
Julian Clarkson, Fort Myers, for appellee.
GRIMES, Judge.
This is an appeal from a final judgment awarding a contractor an equitable lien on foreclosed land prior in dignity to the lien of the mortgage.
Landco, Inc. owned property in Punta Gorda on which it determined to build a condominium project. Landco obtained a construction loan commitment from appellant (Indiana) for $1,800,000. Pursuant to the loan agreement, Landco executed a note to Indiana in this amount which was secured by a mortgage recorded on July 18, 1973. Appellee (Peacock) entered into a contract with Landco for the construction of the condominium for a contract price of $1,200,000. Subsequent change orders increased the contract price to $1,351,522. Peacock was not a party to the loan agreement. Notice of commencement was recorded on July 24, 1973. Peacock began work in December of 1973 and completed the project in June of 1975.
On August 19, 1975, Indiana filed suit to foreclose the $1,800,000 mortgage together with a subsequent mortgage of $32,825. Peacock and various subcontractors and materialmen were joined as defendants in the suit. Peacock filed a counterclaim for the balance of monies owed on the construction contract. Following a nonjury trial, the court directed that the mortgages be foreclosed and the property sold at public sale but concluded that Peacock was entitled to an equitable lien on the land superior to both mortgages in the amount of $209,881.46. Indiana appeals that portion of the judgment which awarded Peacock the prior lien.
Peacock's prior lien was predicated entirely upon a telephone conversation between its president Cassius Peacock, Jr., and Donna Crane, Indiana's loan disbursements representative. Mr. Peacock said *60 that he called Indiana on August 16, 1974, to inquire of the status of the loan because at that time Landco owed his company some $257,000 on draw applications previously submitted. He said he first obtained from Ms. Crane information concerning the several disbursements to Landco which had already been made because he wanted to compare these payments with what his company had been receiving. He then inquired how much money was undisbursed in the construction loan fund but was advised that this information could not be divulged. Mr. Peacock then testified:
"So I said, `If I tell you how much money is yet to be paid us, can you tell me whether or not that's enough to finish the job?' And she said, `How much do you show?'
So I told her and she said there was enough left in the construction loan fund to cover that amount of money."
Mr. Peacock could not recall the figure that he gave as being the cost of finishing the project, but he said that he would have arrived at the correct amount by making an appropriate computation from figures reflected on the last draw request.
Ms. Crane admitted that she had several telephone conversations with Mr. Peacock while the project was under construction, but she said she had no specific recollection of the conversation of August 16, 1974, about which Mr. Peacock testified. She said that she would not have advised Mr. Peacock that there were sufficient undisbursed loan funds to pay for the completion of the project because she was not authorized to do so.
The records reflect that on August 16, 1974, the balance of the undisbursed construction loan fund was about $100,000 short of what would have been necessary to pay Peacock in full for its previous unpaid draws plus the remainder of the money that would be owing to Peacock upon the completion of the work. All loan disbursements subsequent to August 16, 1974, were used either to pay subcontractors or materialmen on the project, to pay interest on the construction loan pursuant to the loan agreement or to pay Peacock. All payments received by Peacock after that date were by way of Indiana's checks payable jointly to Landco and Peacock. When the project was completed, Landco still owed Peacock $191,284.18 plus interest. There were no remaining undisbursed loan funds.
In support of the judgment, Peacock relies primarily upon our opinion in J.G. Plumbing Service, Inc. v. Coastal Mortgage Company, 329 So.2d 393 (Fla.2d DCA 1976), which was issued just three months before the trial in this cause. In that case we said:
"... we readily agree that a construction lender should not be permitted to affirmatively mislead subcontractors and materialmen so as to induce them to continue to work upon and supply materials to the job to their detriment. A construction lender who falsely advises a materialman or subcontractor that the mortgage is not in default must suffer the consequences if further work and materials are incorporated into the project in reliance thereon. Such action would be equivalent to the fraud and misrepresentation which the courts have traditionally sought to remedy where possible through the imposition of an equitable lien."
Accepting Peacock's version of the facts, as we must for purposes of this appeal, we do not believe that the telephone call of August 16, 1974, furnished a sufficient basis upon which to predicate the imposition of an equitable lien on the property. The parties were not in privity. The mortgage was not in default at the time of the conversation. There was no promise to retain monies specifically for the benefit of Peacock. No funds were disbursed in violation of the loan agreement. There was no agreement to underwrite the contractor's obligations under the construction contract. There was no evidence that Indiana was seeking to induce Peacock to continue to work on the project. In the words of J.G. Plumbing Service, Inc., the only duty flowing from the mortgagee in this posture was not to "affirmatively deceive" the contractor to his detriment. The mistaken observation that there seemed to be enough money *61 left in undisbursed loan funds to complete the project falls short of what we contemplated as "affirmative deception" equivalent to fraud and misrepresentation which would justify the imposition of an equitable lien. See also Gancedo Lumber Company, Inc. v. Flagship First National Bank of Miami Beach, 340 So.2d 486 (Fla.3d DCA 1976). To permit a telephone conversation of this nature under the circumstances of this case to result in subordinating the mortgage to an equitable lien would inject an unnecessary degree of uncertainty into the construction loan industry.
There is a second reason why this judgment must be reversed. Peacock's answer to the complaint simply constituted a general denial. Thereafter, Indiana filed a motion for summary judgment supported by an appropriate affidavit. Peacock then moved to amend its answer by adding a counterclaim in which it sought a judgment against Indiana to the extent of a 10% retainage which Indiana was alleged to have withheld from the loan disbursements. The court granted Indiana's motion for summary judgment except with respect to priorities between Indiana and Peacock.
Indiana made a second effort to obtain a summary judgment upon all issues and scheduled a hearing for January 29, 1976. Two days prior to the hearing, Peacock filed an unsworn statement in opposition to the motion and attached thereto copies of unauthenticated documents which counsel asserted "might relate to the motion for summary judgment filed by the plaintiff." These documents included copies of the construction loan agreement, checks representing disbursements by Indiana, receipts and partial releases of liens, and change orders. There was no indication how any of these documents presented issues of fact even if they were appropriately before the court in the absence of a sworn statement. The court once again denied Indiana's motion for summary judgment as it related to priority over the contractor's claim.
At this point in the proceeding, there were neither pleadings nor proof directed to deception on the part of Indiana nor reliance by Peacock on statements made by Indiana. In opposition to the contention that Indiana should have been granted a summary judgment against Peacock at either the first or the second hearing, Peacock points to a portion of a memorandum filed by appellant following the second hearing which stated:
"The plaintiff does not wish to preclude Peacock from having its day in court on its counterclaim and suggests that the court's order granting the plaintiff's motion for summary judgment specifically reserve that issue for later determination."
This statement did not constitute a concession of anything bearing upon lien priorities because the counterclaim as then on file was making a direct claim against Indiana for monies allegedly consisting of undisbursed loan funds and did not include a claim for an equitable lien on the land. It was only after the motion for summary judgment was denied a second time that Peacock further amended its counterclaim to interpose a claim for an equitable lien upon the property. Therefore, Indiana was entitled to summary judgment before the issue of "affirmative deception" was ever introduced into the case.
REVERSED.
SCHEB, J., concurs.
HOBSON, Acting C.J., concurs specially with opinion.
HOBSON, Acting Chief Judge, concurring specially.
I concur in the conclusion because I agree with the first ground for reversal which is stated in the opinion. However, I would not reverse for failure to grant a summary judgment.