**HOME SAVINGS ASSOCIATION OF KANSAS CITY, F.A., a federally chartered stock savings and loan association, Plaintiff,**

v.

**The STATE BANK OF WOODSTOCK, an Illinois banking corporation, as Trustee under Trust Agreement dated March 17, 1980 and known as Trust No. 3033, Crystal Lake Hotel Limited Partnership, an Illinois limited partnership, Mid–Continent Builders, Inc., an Illinois corporation, Wilbert J. Hanke, Jack Curran, William Franz, Non–Record Claimants, and Unknown Others, Defendants.**

No. 90 C 1748.

United States District Court,
N.D. Illinois, E.D.

March 5, 1991.

James R. Morrin, John B. Griffin, John T. Benz, Jill A. Cuba, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for plaintiff.

William I. Caldwell, Jr., Richard T. Jones, Jeffrey A. Rouhandeh, Caldwell Berner & Caldwell, Woodstock, Ill., Frank J. Dolan, David J. Tecson, Frank J. Dolan & Assoc., Raymond J. Kelly, Gus A. Paloian, Seyfarth Shaw Fairweather & Geraldson, Raymond A. Fylstra, Edward T. Joyce, Joyce & Kuabasiak, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Before the court are motions by Home Savings Association of Kansas City, F.A. ("Home Savings") and Mid–Continent Builders, Inc. ("Mid–Continent") to dismiss certain counts of a counter and cross-claim filed by Wilbert J. Hanke, John H. Curran, and William M. Franz, and William M. Franz as Trustee of a trust deed. For the reasons stated herein, this court grants Home Savings' motion but denies that of Mid–Continent.

## BACKGROUND

This case arises out of the financing for and construction of the Crystal Lake Holiday Inn, built in McHenry County, Illinois. Although this court has set out the background facts of this litigation in an earlier opinion, the relative complexity of the issues warrants reiteration. As is always the case with motions to dismiss, this court shall regard the facts alleged in the counter and cross-complaint as true. *National Van Lines, Inc. v. United States,* 326 F.2d 362, 372 (7th Cir.1964).

Some time prior to 1986, Hanke, Curran and Franz acquired a vacant tract of land in Crystal Lake with the intent to develop a hotel. They placed the property in a land trust ("Trust 3033"), with the State Bank of Woodstock ("Woodstock") serving as trustee and themselves as owners of 100 percent of the beneficial interest. Their construction plans resulted in two loan transactions that involved Trust 3033 as collateral. In the first, the three decided to unite with Mid–Continent Builders, Inc. ("Mid–Continent"), headed by Gerald Stillman, to form the partnership that would develop the hotel. On September 30, 1986, Hanke, Curran and Franz sold to Mid–Continent an undivided two-thirds interest in the beneficial interest of Trust 3033 for $1,300,000. Mid–Continent paid $300,000 of the purchase price up front, and gave Hanke, Curran and Franz a promissory note for the remaining $1,000,000. Repayment of the note was secured by both a trust deed, in which Franz was named as trustee (hereinafter "Franz as Trustee") for the benefit of Hanke, Curran and himself, and a collateral assignment of Mid–Continent's beneficial interest in Trust 3033, of which Hanke, Curran and Franz were the assignees. According to the terms of the promissory note, the parties agreed that the note, trust deed, and collateral assignment would be subordinated to any construction loan obtained to develop the hotel. Mid–Continent, Hanke, Curran and Franz then formed Crystal Lake Hotel Limited Partnership (the "Partnership"), with Mid–Continent as general partner and Hanke, Curran, and Franz as limited partners. On October 1, 1986, Mid–Continent and Hanke, Curran and Franz assigned to the Partnership their collective undivided one hundred percent interest in the beneficial interest of Trust 3033. The Partnership then engaged Mid–Continent to construct the hotel.

In 1987, Mid–Continent approached Metro North State Bank, an affiliate of Home Savings, to obtain the construction loan.[1] On June 26, 1987, Home Savings issued a commitment ("Loan Commitment") to lend Mid–Continent "or an Illinois land trust in which [Mid–Continent] is the general partner of the sole beneficiary" an initial sum of $13 million (Loan Commitment at ¶¶ 1, 3). The Commitment provided that the

---

1. Because Home Savings issued a commitment letter to Mid–Continent identical to that issued by Metro North and eventually succeeded to Metro North's rights in and to the interests securing the construction loan to Mid–Continent, this opinion will refer to the lender as "Home Savings."

loan was to be secured by both a first mortgage on the property and all improvements thereon and a first security interest by way of collateral assignment of the Partnership's interest in the beneficial interest of Trust 3033. The Loan Commitment was conditioned expressly upon Home Savings' being assured that its own trust deed and collateral assignment securing its loan would have first priority over those securing the earlier Mid–Continent promissory note (Loan Commitment at ¶ 4). Home Savings required Franz as Trustee to sign a subordination agreement in order to ensure the priority of its security.

Franz as Trustee signed this Subordination Agreement on July 23, 1987. It provided in part:

The Purpose of this Agreement [is] to subordinate all of

Franz's liens relative to the premises ... such that the Franz Mortgage is and shall ever be inferior and junior in all respects to the liens of the Mortgage, Assignment, UCC–2 and the Security Documents [held by Home Savings].

(Subordination Agreement at 1). Included as Exhibit B was a list of Home Savings interests that were to be given priority, including Home Savings' mortgage and the Partnership's collateral assignment of its beneficial interest in Trust 3033 (Subordination Agreement Ex. B).

The project was funded after execution of the Subordination Agreement. Although eventually completed, it incurred substantial cost overruns, which Home Savings funded. These overruns apparently caused Mid–Continent to become unable to meet its financial obligations, not only to Home Savings but to its sub-contractors as well. Fifty-six mechanics' liens were filed against the project and on July 15, 1989, Home Savings declared the loan in default. In December 1989, Home Savings advanced additional funds to settle the mechanics' liens. According to Hanke, Curran and Franz, Home Savings advanced an additional $5 million in principal to settle these liens. According to count III of Home Savings' Second Amended Complaint, however, the bank seeks recovery for only

$2,804,657.84 above its original $13 million commitment to Mid–Continent. In the process, Hanke, Curran and Franz allege, their equity was wiped out without their knowledge.

Hanke, Curran and Franz and Franz as Trustee contend that Home Savings' failure to supervise adequately the hotel project lies at the root of Mid–Continent's cost overruns and, consequently, the mechanics' liens that followed. They further contend that in settling these liens, Home Savings acted solely out of concern for its own interests. They allege that Home Savings was financing at least nine other Mid–Continent projects at the time, which resulted in substantial credit exposure for the bank. It was in Home Savings' best interests, they further assert, to continue funding the hotel project nonetheless because the bank believed that it had a more substantial equity cushion there than on the other Mid–Continent projects. They point out that the hotel was completed in October 1988, with most of the mechanics' liens being filed in January 1989. It was not until December 1989, when certain lien claimants filed an involuntary bankruptcy petition against Mid–Continent that Home Savings satisfied their claims. At the time, they assert, the Mid–Continent note already was seven months overdue.

Home Savings filed suit in this court against Woodstock, the Partnership, Mid–Continent, Hanke, Curran, Franz, and non-record claimants and unknown owners of beneficial interests in Trust 3033, seeking, *inter alia*, 1) foreclosure and sale of the beneficial interest in Trust 3033; 2) damages for alleged misrepresentations by Woodstock; and 3) foreclosure and sale pursuant to its mortgage with a joint and several judgment for any deficiency against the Partnership and Mid–Continent. At the court's suggestion, Home Savings dismissed Hanke, Curran and Franz when it appeared that they had no interest in Trust 3033.

Six weeks later, Hanke, Curran and Franz and Franz as Trustee (collectively, the "counter-plaintiffs" or "cross-plaintiffs") reentered the suit as "unknown oth-

ers" asserting an interest in the trust. They then filed counterclaims and cross-claims seeking 1) rescission of the Subordination Agreement or equitable subordination of Home Savings' mortgage to the Mid–Continent trust deed held by Franz as Trustee (count I); 2) $5 million damages from Home Savings for breach of contract (count II); 3) foreclosure and sale pursuant to the trust deed securing the Mid–Continent promissory note, along with a judgment for any deficiency against Mid–Continent (count III); and 4) a judgment for $2,635,000 plus interest against Mid–Continent for failure to honor its promissory note to the Limited Partners (count IV).

Home Savings has moved for dismissal of counts I and II of the counterclaim against it. Mid–Continent moves for dismissal of counts III and IV of the cross-claim. This court will address each of these motions in turn.

## DISCUSSION AND ANALYSIS

### I. *Home Savings' Motion to Dismiss Counts I and II*

A. Count I: Rescission and Equitable Subordination

In count I of their counterclaim against Home Savings, the counter-plaintiffs seek rescission of the Subordination Agreement or, in the alternative, equitable subordination of Home Savings' construction mortgage to the Mid–Continent trust deed on the grounds that Home Savings breached express and implied covenants set forth in its Loan Commitment.

1. *Rescission*

■ Home Savings contends that the counter-plaintiffs have failed to state a claim entitling them to rescission of the Subordination Agreement. We agree. Leaving aside whether the counter-plaintiffs could satisfy certain prerequisites to rescission,[2] the facts they allege fail to

state any cognizable grounds under which that remedy might be available.

■ An equitable remedy, rescission is available only when a contract is procured by fraud or misrepresentation, when it is based on a material mistake, or in the presence of substantial non-performance or breach of contract by a party. *Farmer v. Koen*, 187 Ill.App.3d 47, 134 Ill.Dec. 819, 542 N.E.2d 1326 (5th Dist.1989). Inasmuch as the first two grounds for rescission are obviously inapplicable to this case, the only means by which the counter-plaintiffs may obtain the benefits of this remedy is if Home Savings materially breached a contract to which both it and the counter-plaintiffs were parties.

Here, however, the counter-plaintiffs run up against an immediate obstacle, for they never were parties to any written agreement signed by both them and Home Savings. As a way around this, the counter-plaintiffs urge this court to treat the Subordination Agreement, Home Savings' mortgage, and the Loan Commitment as a single instrument because they were executed in the course of a single transaction and for the same purpose. In essence, they contend that the unconditional Subordination Agreement signed by Franz as Trustee incorporated by reference the terms of the Loan Commitment, entitling them to rely upon Home Savings' adherence to the terms of the Loan Commitment when they agreed to subordinate their interest in the Mid–Continent trust deed.

■ Whether two legal documents should be regarded as a single instrument depends upon the documents themselves as well as the intentions of the parties. The parties' intentions are to be taken from the surrounding circumstances. *Goldberg v. Xorco, Ltd.*, 728 F.Supp. 494 (N.D.Ill.1989) citing *Bank of Viola v. Nestrick*, 72 Ill. App.3d 276, 28 Ill.Dec. 469, 390 N.E.2d 636 (3d Dist.1979). Typically, documents exe-

---

**2.** A party seeking rescission must restore the other party to the status quo existing at the time the contract was executed, even where fraud is alleged. *Puskar v. Hughes*, 179 Ill.App.3d 522, 127 Ill.Dec. 880, 533 N.E.2d 962 (2d Dist.1989). Home Savings makes the argument, quite plau-

sible, that this would require the counter-plaintiffs to refund to it all monies advanced and presently due, which they have neither tendered nor offered to tender to the bank. *See Soderberg v. Gens*, 652 F.Supp. 560, 565 (N.D.Ill.1987).

cuted at the same time by *the same parties* concerning the same subject matter will be construed as one. *See Main Bank of Chicago v. Baker*, 86 Ill.2d 188, 201, 56 Ill.Dec. 14, 19, 427 N.E.2d 94, 99 (1981) (*"as between the same parties*, a note may be affected by a separate writing"*)*.

Taking the facts alleged in the counter-complaint—including the unambiguous terms of the instruments at issue—as true, this court must conclude that the counter-plaintiffs have failed to state a claim entitling them to rescission of the Subordination Agreement. Fatal to their attempt is the fact that the Subordination Agreement and Loan Commitment were not signed by the same parties. Franz as Trustee was the sole signer of the Subordination Agreement. The Loan Commitment was signed solely by Home Savings (defined therein as the "Lender") and Mid–Continent (defined therein as the "Borrower"); neither Curran, Hanke and Franz nor Franz as Trustee were even named therein. The clear language of the two documents, moreover, confirms that each was meant to serve as the complete agreement between the parties signing it. The Subordination Agreement contained an unconditional promise by Franz as Trustee to subordinate the Mid–Continent trust deed; it contained no provisions either incorporating the terms of the Loan Commitment or containing covenants running from Home Savings to Franz as Trustee.[3] Indeed, the Commitment expressly disavowed any intent to benefit anyone other than Lender, Borrower, and their successors and assigns (Loan Commitment at C–9, ¶ 29).

Although the counter-plaintiffs are entitled to the benefit of their well-founded factual allegations, interpretation of an unambiguous contract remains a question of law. *Goodman v. Board of Trustees*, 498 F.Supp. 1329, 1337 (N.D.Ill.1980). Although Franz could have bargained for the standards the counter-plaintiffs now contend were material to the agreement to subordinate—they do not allege that Home Savings impinged upon Franz's freedom to do so—he agreed to subordinate the Mid–Continent trust deed unconditionally. This court will not add covenants to unambiguous contracts "simply to reach what may appear to be a more equitable result." *Touhy v. Twentieth Century–Fox Film Corp.*, 69 Ill.App.3d 508, 513, 26 Ill.Dec. 32, 35–36, 387 N.E.2d 862, 865–66 (1st Dist. 1979).

## 2. *Equitable Subordination*

In the alternative, the counter-plaintiffs ask that this court issue an order equitably subordinating Home Savings' mortgage, or the amount advanced in excess of the original $13 million principal, to the Mid–Continent trust deed. The counter-plaintiffs direct this court's attention to the 1932 case of *Glencoe State Bank v. Cole*, 265 Ill.App. 158 (2d Dist.1932). In *Glencoe*, a builder bought a lot on which he planned to construct a building, giving the seller a purchase money mortgage for the cost. The builder then sought a $10,000 construction loan from Glencoe State Bank. The purchase money mortgagee approached the bank as well, to inquire as to the purpose for which the builder was seeking the loan. The bank's officers orally represented to him that all funds advanced would go to construction of the building, and asked if he would subordinate his mortgage to theirs. The purchase money mortgagee stated that he would and did so, apparently in reliance on the bank's statement of the loan's intended purpose. *Id.* at 161. The bank then advanced the full $10,000 to the builder; $7,000 of the loan disappeared, however, and the building was left unfinished. On the basis of these facts, the court equitably subordinated the lender's interest in all but the $3,000 that had been applied to the building. *Id.*

Despite the fact that the bank and the subordinating mortgagee had not reduced their understanding to writing, the *Glencoe* court held that equity imposed an implied

---

**3.** In further support of their incorporation theory, the counter-plaintiffs direct this court's attention to Exhibit B to the Subordination Agreement, which explicitly named the Loan Commitment. Exhibit B, however, merely listed additional security documents to which the Mid–Continent trust deed was to be subordinated (Subordination Agreement at 1).

duty on the bank under the circumstances to ensure that the loan proceeds were applied to the costs of the building they were supposed to finance. *Id.* at 170. Under *Glencoe,* the counter-plaintiffs assert, the Subordination Agreement contained an implied provision that conditioned the subordination of their Mid–Continent trust deed on Home Savings' ensuring that the loan was applied to hotel construction and was administered in a "conventional" manner.

In the absence of a ruling by the Illinois Supreme Court, we are obligated under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to predict how that court would rule if faced with this issue. Although we must give due consideration to the *Glencoe* decision as the only available relevant ruling by an Illinois intermediate appellate court, we may disregard it if we are convinced that the Illinois Supreme Court would rule differently. *American Dental Ass'n v. Hartford Steam Boiler Inspection & Ins. Co.,* 625 F.Supp. 364, 367 (N.D.Ill.1985), citing *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).

Were the Illinois Supreme Court to adopt the holding of the *Glencoe* court today, it would stand solidly in the minority of jurisdictions that have addressed the issue. As these other courts have held:

> Where there is an agreement subordinating a subsequent lien for purposes of a construction loan, in the absence of an express covenant from the subsequent lienor to the prior lienor to see to the application of the sums advanced, the diversion of funds on the part of the mortgagor is a risk run by the prior lienor unless he is able to demonstrate collusion between the mortgagor and the subsequent lienor.

*Hyatt v. Maryland Fed. Sav. & Loan Ass'n,* 42 Md.App. 623, 402 A.2d 118, 122 (1979). *See, e.g., Provident Fed. Sav. & Loan Ass'n v. Idaho Land Developers, Inc.,* 114 Idaho 453, 757 P.2d 716 (App. 1988); *Big Land Invest. Corp. v. Lomas & Nettleton Financial Corp.,* 657 P.2d 837, 843 (Alaska 1983); *People's Bank & Trust Co. v. Rocky Mountain, Etc.,* 620 P.2d 58 (Colo.App.1980); *Rockhill v. United States,* 288 Md. 237, 418 A.2d 197, 204 (1980); *Tuscarora, Inc. v. B.V.A. Credit Corp.,* 218 Va. 849, 241 S.E.2d 778 (1978); *Indiana Mortgage & Realty Investors v. Peacock Constr. Co.,* 348 So.2d 59 (Fla. App.), *cert. denied,* 353 So.2d 677 (Fla. 1977); *First Connecticut Small Business Invest. Co. v. Arba, Inc.,* 170 Conn. 168, 365 A.2d 100, 104 (1976); *but see Cambridge Acceptance Corp. v. Hockstein,* 102 N.J.Super. 435, 246 A.2d 138, *cert. denied,* 53 N.J. 81, 248 A.2d 434 (1968).[4]

It seems extremely unlikely that the Illinois Supreme Court would adopt today the implied duty recognized in the *Glencoe* court's depression-era ruling. It is fully within the power of a subordinating mortgagee to refuse to sign a subordination agreement containing what it considers unacceptable terms, such as unconditionality. To impose a duty of cautious loan administration on the lender where none is expressed in the executed subordination agreement, thereby making subordination conditional, would amount to judicial redrafting of the parties' agreement, an exer-

---

**4.** *Cambridge,* decided on equitable grounds, disavowed the majority rule. Nonetheless, a careful reading of its facts would seem to place it within the majority rule's collusion prong. In *Cambridge,* a lot owner granted a lease that provided that he would subordinate it to future mortgages for motel construction "to the extent of $5,500 'per motel unit.' " *Cambridge Acceptance Corp. v. American Nat'l Motor Inns, Inc.,* 96 N.J.Super. 183, 232 A.2d 692, 702 (1967) (trial court opinion). His lessee then sought a loan using the property as security. Fully aware of the restriction, the bank issued the lessee a $100,000 loan secured by a mortgage on the property. It did so, however, with the under-

standing that the lessee would use the proceeds to conduct its business and pay corporate obligations. 232 A.2d at 698. Within three months, the bank had advanced the entire $100,000, $10,-500 of which the lessee returned as a "bonus." *Id.* at 700–01. No construction took place.

Although it found that the bank had not connived with the lessee to defraud the lessor, the New Jersey appellate court concluded that the bank had "mask[ed] what is essentially a loan on the general credit and reliability of the borrower and the security of the land value as a construction loan" and thus could not foreclose on the lessor's property. 246 A.2d at 141.

cise of power soundly rejected by the Illinois courts. *See, e.g., Michigan Ave. Nat'l Bank v. Evans, Inc.,* 176 Ill.App.3d 1047, 126 Ill.Dec. 245, 531 N.E.2d 872 (1st Dist. 1988); *Lakeland Property Owners Ass'n v. Larson,* 121 Ill.App.3d 805, 77 Ill.Dec. 68, 459 N.E.2d 1164 (2d Dist.1984); *Grandview v. Springfield,* 122 Ill.App.3d 794, 78 Ill.Dec. 197, 461 N.E.2d 1031 (4th Dist. 1984); *Mineral Resources, Inc. v. Classic Coal Corp.,* 115 Ill.App.3d 114, 70 Ill.Dec. 906, 450 N.E.2d 379 (5th Dist.1983).

The allegations set forth in the counter-complaint before us fail to state a claim that would warrant equitable subordination under the majority approach. The Subordination Agreement was unambiguously unconditional; it contained no express covenant from Home Savings to Franz as Trustee conditioning Home Savings' priority in any way whatsoever. Nor have the counter-plaintiffs alleged any collusion between Home Savings and Mid–Continent to divert funds away from the hotel project.

■ Apparently searching for some sort of express condition on which they can base a claim, the counter-plaintiffs direct this court's attention to an express covenant in the Loan Commitment that allegedly provided that all money advanced by Home Savings could be used "only for construction of the hotel and for no other purpose" (counterclaim ¶ 9). Even assuming, *arguendo,* that the terms of the Loan Commitment were incorporated into the Subordination Agreement, this covenant is of no benefit to the counter-plaintiffs. First, the covenant ran *from* Mid–Continent *to* Home Savings, not vice versa. Second, the counter-plaintiffs misquote the provision, which in fact provided that loan funds could "be used only *for this*

*project"* (Loan Commitment Ex. A at ¶ 14). This phrase clearly encompassed settlement of mechanics' liens.

Questions of reasonable loan administration aside,[5] in arguing that Home Savings destroyed their equity, the counter-plaintiffs' principal complaint lies in the bank's decision to advance funds in excess of its original $13,000,000 commitment in order to settle the mechanics' liens. The counter-plaintiffs attempt to cast aspersions upon Home Savings' motivation for its actions because it did not advance these funds until after the sub-contractors on the hotel project sought to place Mid–Continent in involuntary bankruptcy, some seven months after Mid–Continent had initially defaulted on its obligation to the bank. They contend that under these facts, Home Savings' actions amounted to an extension of some $5 million in new credit to Mid–Continent under the guise of a construction loan.

This contention ignores the Loan Commitment's clear terms. The Loan Commitment gave Home Savings cumulative remedies that included the right, but not the obligation, to cure any events of default that could be remedied by the payment of money (Loan Commitment Ex. C at ¶¶ 21–22). Funds advanced under this provision were to be added to the balance of the note (Loan Commitment Ex. C at ¶ 21). Events of default falling within the scope of this provision included both filing of liens against the property and filing of an involuntary bankruptcy petition against the borrower (Loan Commitment Ex. C at ¶ 17). Home Savings merely exercised another of its cumulative remedies under the Loan Commitment.[6] Count I must be dismissed.

---

**5.** We shall treat the counter-plaintiffs' contention that Home Savings' loan administration was in some way the cause of the cost overruns that in turn led to the mechanics' liens—and whether the counter-plaintiffs can raise a claim on this basis—as a distinct issue in Section IB, *infra.*

**6.** The counter-plaintiffs' argument ignores common sense as well. Their equity position became endangered, not when Home Savings settled the mechanics' liens, but rather when those

liens were filed. Had Home Savings not advanced these additional sums, the outstanding mechanics' liens would have had priority over both its mortgage and the Mid–Continent trust deed. Ill.Rev.Stat. ch. 82, ¶ 16. *See First Federal Sav. & Loan Ass'n v. Connelly,* 97 Ill.2d 242, 73 Ill.Dec. 454, 454 N.E.2d 314 (1983). As a result of Home Savings' actions, the hotel, which had been completed exclusively with its money, was left free of all encumbrances except those belonging to Home Savings and the Franz Defendants.

### B. Count II: Breach of Contract

In count II, the counter-plaintiffs seek damages against Home Savings for what they contend was its breach of certain "mandatory terms" of the Loan Commitment concerning loan administration and of the implied covenant of good faith and fair dealing. In order to state a claim for breach of contract, however, the complaining party must be either a party to or a third party beneficiary of the contract allegedly breached. *See Smith v. Clark Equipment Co.*, 136 Ill.App.3d 800, 91 Ill. Dec. 520, 483 N.E.2d 1006 (1st Dist.1985). As did count I, this count hinges upon the counter-plaintiffs' theory, previously rejected, that the terms of the Loan Commitment between Home Savings and Mid–Continent were incorporated by reference into the Subordination Agreement signed by Franz as Trustee. The counter-plaintiffs were not first parties to the Loan Commitment; nor, as they concede, were they third-party beneficiaries. They have no standing to raise a claim for breach of contract.

Even if the counter-plaintiffs had standing, their allegations would fail to state a claim on which relief could be granted. The terms of the Loan Commitment were unambiguous in providing that Home Savings' sole obligation—and conditional at that—was to fund the hotel project with a first mortgage construction loan (Loan Commitment ¶ 1). The "mandatory terms" allegedly breached by Home Savings are unambiguously *rights* reserved to Home that constituted the conditions under which it would continue to advance funds to Mid–Continent. Although Home Savings could have insisted on Mid–Continent's strict compliance with these provisions, they were placed there for the bank's benefit and the bank had the power to waive them. *Whalen v. K–Mart Corp.*, 166 Ill.App.3d 339, 116 Ill.Dec. 776, 519 N.E.2d 991 (1st Dist.), *appeal denied*, 121 Ill.2d 587, 122 Ill.Dec. 448, 526 N.E.2d 841 (1988). The Loan Commitment itself contemplated that Home Savings might elect to do so (Loan Commitment App. C ¶ 28).

The counter-plaintiffs' only remaining claim, therefore, is for breach of the implied covenant of good faith and fair dealing. This cause of action is not independently actionable under Illinois law. *Washburn v. Union Nat'l Bank & Trust Co.*, 151 Ill.App.3d 21, 104 Ill.Dec. 242, 502 N.E.2d 739 (3d Dist.1986); *Gordon v. Matthew Bender & Co.*, 562 F.Supp. 1286, 1289 (N.D.Ill.1983). Count II must be dismissed as well.

### II. *Mid–Continent's Motion to Dismiss Counts III and IV*

In their counts III and IV, Curran, Hanke and Franz and Franz as Trustee have filed cross-claims against Mid–Continent in an effort to foreclose the trust deed held by Franz as Trustee that secures the Mid–Continent promissory note and recover from Mid–Continent the principal, interest, and late fees due thereunder. Mid–Continent contends that the counts against it must be dismissed in light of the cross-plaintiffs' admission that they failed to comply with all material terms of the promissory note.

In their affirmative defense to Home Savings' complaint, the cross-plaintiffs assert that, despite the Subordination Agreement, they hold:

> a Collateral Assignment of the beneficial interest in the State Bank of Woodstock Trust No. 3033 which is prior in time and prior in right to the purported collateral assignment allegedly held by plaintiff.... The Subordination Agreement referred to in the Answers of the co-defendants does not apply to the attached Collateral Assignment. Accordingly, the purported collateral assignment held by plaintiff is void.

Mid–Continent asserts that this affirmative defense constitutes an admission by the cross-plaintiffs that they failed to comply with all material terms of the promissory note on which they now seek to recover. That promissory note provided that they would subordinate their interest in the note, and the trust deed and collateral assignment securing it, to the interests of any construction lender providing financing for the project. Contending that the cross-plaintiffs' promise to subordinate all of

their interests was a material part of their agreement, Mid–Continent argues that their failure to perform should deny them any right of recovery against it. *Allsopp Sand & Gravel, Inc. v. Lincoln Sand & Gravel Co.*, 171 Ill.App.3d 532, 121 Ill.Dec. 878, 525 N.E.2d 1185 (4th Dist.), *appeal denied*, 122 Ill.2d 569, 125 Ill.Dec. 210, 530 N.E.2d 238 (1988).

The cross-plaintiffs respond that they fully performed their obligations to Mid–Continent by executing all documents that Home Savings required them to execute as a prerequisite to funding of the construction loan.[7] Home Savings, they allege, never requested subordination of the collateral assignment held by Hanke, Curran and Franz. Instead, the bank asked only that Franz sign the Subordination Agreement in his capacity as Trustee of the Mid–Continent trust deed. The Subordination Agreement signed, Home Savings advanced the construction loan.

In construing a contract, a court should give great weight to "the principal, apparent purpose and intention of the parties at the time that they entered into the contract." *De Witt County Public Bldg. Comm'n v. De Witt County*, 128 Ill.App.3d 11, 18, 83 Ill.Dec. 82, 469 N.E.2d 689, 695 (4th Dist.1984). The purpose of the subordination clause in the Mid–Continent promissory note was to ensure that the cross-plaintiffs would do what was necessary to induce a bank to provide a construction loan, if and when such a loan was sought. This purpose was achieved when the loan issued. The cross-plaintiffs' failure, if any,[8] to subordinate their interests completely could not have been material to Mid–Continent, which received *both* two-thirds of the beneficial interest in Trust 3033 *and* the contemplated construction loan. Mid–Continent's motion to dismiss counts III and IV of the cross-claim is denied.

**7.** The parties dispute precisely who drafted the Subordination Agreement. The cross-plaintiffs insist that Home Savings was the drafter, while Mid–Continent contends that the drafter was Franz.

**8.** We will not address at this time the scope of Home Savings' priority over the interests of

CONCLUSION

Home Savings' motion to dismiss counts I and II of the counterclaim against it is granted. Mid–Continent's motion to dismiss counts III and IV of the cross-claim against it, however, is denied.

Hanke, Curran, Franz and Franz as Trustee. We note, however, that Mid–Continent is, essentially, contending that because the cross-plaintiffs did not effectively assign their rights against Mid–Continent to Home Savings no one can assert those rights against Mid–Continent.